**Stephen M. Feldman, OSB No. 93267**; sfeldman@perkinscoie.com
**Thomas R. Johnson, OSB No. 01064**; trjohnson@perkinscoie.com
PERKINS COIE LLP
PacWest Center, Suite 1500
1211 S.W. Fifth Avenue
Portland, OR  97204-3715
Telephone:  (503) 727-2000
Facsimile:  (503) 727-2222

      Attorneys for Plaintiffs

**Jerre B. Swann**; jswann@kilpatrickstockton.com
**William H. Brewster**; bbrewster@kilpatrickstockton.com
**R. Charles Henn, Jr.**; chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

      Of Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.** and **ADIDAS-SALOMON AG,**<br><br>          Plaintiffs,<br><br>    v.<br><br>**TARGET CORP., E. S. ORIGINALS, INC., B.U.M. INTERNATIONAL, INC.,** and **ACI INTERNATIONAL, INC.,**<br><br>          Defendants. | NO. CV01-1582 RE<br><br>**AMENDED COMPLAINT (First)**<br><br>(Trademark & Trade Dress Infringement, Trademark & Trade Dress Dilution, Unfair Competition, and Deceptive Trade Practices)<br><br>**DEMAND FOR JURY TRIAL** |

   1-  AMENDED COMPLAINT

[21184-0009/PA030220.047]

EXHIBIT _1_ Page _1_ of _8_

Haw. Rev. Stat. §§ 481A-1 to 481A-5 (1993); Illinois, 815 Ill. Comp. Stat. Ann. 510/1 to 510/7 (1993); Maine, Me. Rev. Stat. Ann. tit. 10, §§ 1211 to 1216 (West 1996); Minnesota, Minn. Stat. Ann. § 325D.43 to .48 (West 1995); Nebraska, Neb. Rev. Stat. §§ 87-301 to 87-306 (1995); New Mexico, N.M. Stat. Ann. §§ 57-12-1 to 57-12-22 (Michie 1995); New York, N.Y. Gen. Bus. L. § 349 (McKinney 1988); Ohio, Ohio Rev. Code Ann. §§ 4165.01 to 4165.04 (West 1995); and Oklahoma, Okla. Stat. Ann. tit. 78, §§ 51 to 55 (West 1995 & Supp. 1998).

74.    Defendants' unauthorized use of confusingly similar imitations of Plaintiffs' THREE STRIPE Mark has caused and is likely to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover damages, punitive damages, costs and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

1.    Defendants and all their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined permanently, from:

a.    using the THREE STRIPE Mark, SUPERSTAR Trade Dress, or any other copy, reproduction, or colorable imitation or simulation of Plaintiffs' THREE STRIPE Mark or SUPERSTAR Trade Dress on or in connection with Defendants' goods or services;

b.    using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks, service marks, names, or logos of Plaintiffs;

c.    using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are

19- AMENDED COMPLAINT

[21184-0009/PA030220.047]

**PERKINS COIE LLP**
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000



EXHIBIT_1_ Page 2 of 8

produced or provided by Plaintiffs, or are sponsored or authorized by or in any way connected or related to Plaintiffs;

      d.    using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of Plaintiffs; and

      e.    passing off, palming off, or assisting in passing off or palming off, Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

    2.    Defendants be ordered to recall all products bearing the THREE STRIPE Mark, SUPERSTAR Trade Dress or any other confusingly similar mark, which have been shipped by Defendants or under their authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

    3.    Defendants be ordered to deliver up for impoundment and for destruction all footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the control of Defendants that are found to adopt, to infringe, or to dilute any of Plaintiffs' trademarks or trade dress or that otherwise unfairly compete with Plaintiffs and their products and services;

    4.    Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the sale or distribution of infringing goods as described in this Complaint;

    5.    Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

    6.    Based on Defendants' knowing and intentional use of confusingly similar imitations of Plaintiffs' THREE STRIPE Mark and SUPERSTAR Trade Dress, the damages

20- AMENDED COMPLAINT

[21184-0009/PA030220.047]

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT _1_ Page _3_ of _8_

award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.      Defendants be required to pay to Plaintiffs the costs of this action and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

8.      Based on Defendants' willful and deliberate infringement and dilution of Plaintiffs' marks and trade dress, and to deter such conduct in the future, Plaintiffs be awarded punitive damages; and

9.      Plaintiffs have such other and further relief as the Court may deem just.

**JURY TRIAL DEMAND**

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

DATED:  February 5, 2003

**PERKINS COIE** LLP

By  /s/ Stephen M. Feldman
     Stephen M. Feldman, OSB No. 93267
     Thomas R. Johnson, OSB No. 01064
     Telephone:  (503) 727-2000

Attorneys for Plaintiffs

Jerre B. Swann, (admitted *pro hac vice*)
William H. Brewster, (admitted *pro hac vice*)
R. Charles Henn, Jr., (admitted *pro hac vice*)
**KILPATRICK STOCKTON LLP**
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Of Counsel for Plaintiffs

21- AMENDED COMPLAINT

[21184-0009/PA030220.047]

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT 1 Page 4 of 8

**Stephen M. Feldman, OSB No. 93267,** sfeldman@perkinscoie.com
**Thomas R. Johnson, OSB No. 01064,** trjohnson@perkinscoie.com
PERKINS COIE LLP
1211 Southwest Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2058
Fax: (503) 727-2222

        Attorneys for Plaintiffs

**Jerre B. Swann,** jswann@kilpatrickstockton.com
**R. Charles Henn Jr.,** chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

        Of Counsel for Plaintiffs

ORIGINAL
FILED '03 MAR 13 15:04 USDC-ORP

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC. and ADIDAS-SALOMON AG,<br><br>                Plaintiffs,<br><br>        v.<br><br>CELS ENTERPRISES, INC.,<br><br>                Defendant. | NO.   CV '03 `1323` ST<br><br>**COMPLAINT**<br><br>(Trademark Infringement, Trademark Dilution, Unfair Competition, and Deceptive Trade Practices)<br><br>**DEMAND FOR JURY TRIAL** |

1-  COMPLAINT

[21184-0018/PA030580.019]   # 449283

**PERKINS COIE LLP**
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT 1 Page 5 of 8

Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover damages, punitive damages, costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

1.      Defendant and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined preliminarily and permanently, from:

   a.   using the Three-Stripe Mark, or any other copy, reproduction, or colorable imitation or simulation of Plaintiffs' Three-Stripe Mark on or in connection with Defendant's goods or services;

   b.   using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks, service marks, names, or logos of Plaintiffs;

   c.   using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by or in any way connected or related to Plaintiffs;

   d.   using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, service marks, names, or logos of Plaintiffs; and

15- COMPLAINT

[21184-0018/PA030580.019]

e.    passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.    Defendant be ordered to recall all products bearing the Three-Stripe Mark, or any other confusingly similar mark, which have been shipped by Defendant or under its authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant;

3.    Defendant be ordered to deliver up for impoundment and for destruction all footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the control of Defendant that are found to adopt, to infringe, or to dilute any of Plaintiffs' trademarks or trade dress or that otherwise unfairly compete with Plaintiffs and their products and services;

4.    Defendant be compelled to account to Plaintiffs for any and all profits derived by Defendant from the sale or distribution of infringing goods as described in this Complaint;

5.    Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

6.    Based on Defendant's knowing and intentional use of confusingly similar imitations of Plaintiffs' Three-Stripe Mark, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.    Defendant be required to pay to Plaintiffs the costs of this action and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

16- COMPLAINT

[21184-0018/PA030580.019]

**PERKINS COIE LLP**
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT ___1___ Page _7_ of _8_

8.    Based on Defendant's willful and deliberate infringement and dilution of

Plaintiffs' marks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages;

and

9.    Plaintiffs have such other and further relief as the Court may deem just.

### JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

Dated:  March 13, 2003

PERKINS COIE LLP

By _____

Stephen M. Feldman, OSB No. 93267
Thomas R. Johnson, OSB No. 01064
Telephone:  (503) 727-2000

Attorneys for Plaintiffs

Jerre B. Swann
R. Charles Henn Jr.
**KILPATRICK STOCKTON LLP**
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Of Counsel for Plaintiffs

17-  COMPLAINT

[21184-0018/PA030580.019]

EXHIBIT ___ Page 8 of 8

RECEIVED

AUG 1 2 2003

LPSL

**Stephen M. Feldman,** OSB No. 93267; sfeldman@perkinscoie.com
**Thomas R. Johnson,** OSB No. 01064; trjohnson@perkinscoie.com
PERKINS COIE LLP
PacWest Center, Suite 1500
1211 S.W. Fifth Avenue
Portland, OR 97204-3715
Telephone: (503) 727-2000
Facsimile: (503) 727-2222

Attorneys for Plaintiffs

**Jerre B. Swann,** jswann@kilpatrickstockton.com
**R. Charles Henn Jr.,** chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Of Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC. and ADIDAS-SALOMON AG, <br><br> Plaintiffs, <br><br> v. <br><br> CELS ENTERPRISES, INC., <br><br> Defendant. | NO. CV03-323 RE <br><br> **PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

1- PLAINTIFFS' RESPONSES TO DEFENDANT'S
FIRST SET OF INTERROGATORIES

[21184-0018/PA032230.029]

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT 2 Page 1 of 6

**INTERROGATORY NO. 6:** Identify all third party manufacturers or sellers of footwear of which adidas is aware that bear two, three, or four stripes on footwear, and the dates when such use of stripes began and the dates when adidas became so aware.

**RESPONSE:** In addition to its general objections, adidas objects to this interrogatory on the grounds that it is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. adidas further objects to this interrogatory on the ground that much of the information sought is in the public record and can be obtained by Defendant from some other source that is more convenient and less burdensome. adidas further objects to this interrogatory on the ground that the information sought is protected from discovery by the attorney-client privilege, the work product doctrine, or Fed. R. Civ. P. 26(b)(3). Subject to these objections, and pursuant to Fed. R. Civ. P. 33(d), adidas will produce non-privileged responsive documents from which the answer to this interrogatory can be derived or ascertained.

**INTERROGATORY NO. 7:** Identify in detail all damages claimed by adidas, including any lost sales, lost profits, or other damages and the basis therefore, based on any alleged infringement, dilution, or other claim in the Complaint, by any CELS Product, and identify documents sufficient to support the calculation of any such damages.

**RESPONSE:** In addition to its general objections, adidas objects to this interrogatory on the ground that much of the information necessary to calculate adidas's damages is within the possession, custody, or control of Defendant or its licensees, and has not yet been produced in response to adidas's reasonable discovery requests. adidas further objects to this interrogatory on the ground that it violates Local Rule 33.1(d), which states that contention interrogatories are not permitted. Subject to these objections, adidas responds that it is entitled to recover the profits obtained by Defendant through the sale or distribution of any and all infringing footwear, treble damages, attorney's fees, and costs. adidas will supplement its response to this interrogatory as appropriate once it has received financial information from Defendant during the course of

5- PLAINTIFFS' RESPONSES TO DEFENDANT'S
FIRST SET OF INTERROGATORIES

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT _2_ Page _2_ of _6_

discovery. The documents sufficient to support the calculation of adidas's damages are largely, if not exclusively, within Defendant's possession, custody or control.

**INTERROGATORY NO. 8:** Describe all testing and the results thereof of the Hero, or any other allegedly infringing CELS Product.

**RESPONSE:** In addition to its general objections, adidas objects to this interrogatory to the extent it calls for the disclosure of information that is protected from discovery by the work product doctrine or Fed. R. Civ. P. 26(b)(3) and 26(b)(4). adidas further objects to this interrogatory on the ground that the reference to "testing" is vague and fails to identify the information sought with reasonable particularity. Subject to these objections, adidas responds that it has not yet conducted any non-privileged testing of the Hero shoe or any other CELS products.

**INTERROGATORY NO. 9:** Describe all testing and the results thereof of the Mei.

**RESPONSE:** In addition to its general objections, adidas objects to this request to the extent it calls for the disclosure of information that is protected from discovery by the work product doctrine or Fed. R. Civ. P. 26(b)(3) and 26(b)(4). adidas further objects to this interrogatory on the ground that the reference to "testing" is vague and fails to identify the information sought with reasonable particularity. Subject to these objections, adidas responds that it has a rigorous quality control program through which its footwear products, including the Mei, are inspected and tested on a regular basis to ensure that they are durable and of the highest quality.

**INTERROGATORY NO. 10:** State whether any research, surveys, or focus group studies have been done by adidas or any other person regarding the Mei, the Hero, or the Three-Stripe Mark, and, if so, the person or entity conducting the survey, the date completed, and the results and/or conclusions thereof.

**RESPONSE:** In addition to its general objections, adidas objects to this interrogatory to the extent it calls for the disclosure of information or seeks identification or production of

6- PLAINTIFFS' RESPONSES TO DEFENDANT'S
   FIRST SET OF INTERROGATORIES

[21184-0018/PA032230.029]

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000


EXHIBIT 2 Page 3 of 6

**Stephen M. Feldman,** OSB No. 93267; sfeldman@perkinscoie.com
**Thomas R. Johnson,** OSB No. 01064; trjohnson@perkinscoie.com
PERKINS COIE LLP
PacWest Center, Suite 1500
1211 S.W. Fifth Avenue
Portland, OR 97204-3715
Telephone: (503) 727-2000
Facsimile: (503) 727-2222

**RECEIVED**

DEC 3 0 2002

**LPSL**

Attorneys for Plaintiffs

**Jerre B. Swann;** jswann@kilpatrickstockton.com
**William H. Brewster;** bbrewster@kilpatrickstockton.com
**R. Charles Henn Jr.;** chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Of Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC., and ADIDAS-SALOMON AG, | No. CV01-1582-RE |
| Plaintiffs, | **PLAINTIFFS' RESPONSES TO DEFENDANT B.U.M. INTERNATIONAL, INC.'S FIRST SET OF INTERROGATORIES** |
| v. | |
| TARGET CORP., E.S. ORIGINALS, INC., and B.U.M. INTERNATIONAL, INC., | |
| Defendants. | |

1-  PLAINTIFFS' RESPONSES TO
    BUM'S FIRST INTERROGATORIES

**PERKINS COIE** LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

132

EXHIBIT 2 Page 4 of 6

**INTERROGATORY NO. 9:**

With respect to each pair of shoes identified in Interrogatory No. 4 or 5, state the retail selling price charged or recommended by adidas.

**RESPONSE:**  In addition to the general objections, adidas objects to this interrogatory on the ground that it is overbroad and unduly burdensome given the volume of models identified by the documents produced in response to Interrogatory Nos. 4 and 5.  Subject to these objections, adidas responds that the responsive approximate suggested retail prices are: Infant Superstar $33-$35; Kids Superstar $55-$60; Juniors Superstar $55-$60; Children's Superstar $45; and adult-sized Superstar $60-65.

**INTERROGATORY NO. 10:**

Identify any advertising, promotion, news articles, advertising or media coverage regarding children's shoes with the three stripe mark and/or the Superstar Trade Dress.

**RESPONSE:**  In addition to the general objections, adidas objects to this interrogatory on the ground that it is vague, ambiguous, and fails to identify the information sought with reasonable particularity.  adidas further objects to this interrogatory on the ground that it is overbroad and unduly burdensome.  adidas does not maintain separate files pertaining to children's shoes; rather, its advertising materials are maintained together.  Subject to these objections, adidas responds that, pursuant to Fed. R. Civ. P. 33(d), it will produce advertising and other materials that promote the Three-Stripe Mark and the Superstar Trade Dress, all of which "regard" children's shoes.

**INTERROGATORY NO. 11:**

Identify in detail all damages claimed by adidas, including any lost sales, lost profits or other damages and the basis therefore, based on any alleged infringement by the Mikal shoe.

6-    PLAINTIFFS' RESPONSES TO
      BUM'S FIRST INTERROGATORIES

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT 2 Page 5 of 6

**RESPONSE:** In addition to the general objections, adidas objects to this interrogatory on the ground that much of the information necessary to calculate adidas's damages is within the possession, custody, or control of Defendant or its licensees, and has not yet been produced. adidas further objects to this interrogatory on the ground that it violates Local Rule 33.1(d), which states that contention interrogatories are not permitted. Subject to these objections, adidas responds that it is entitled to recover the profits obtained by Defendant, its licensees, and Target Corporation. adidas will supplement this response as appropriate once it has received profits information from Defendant's licensee and more detailed financial information from Defendant.

**INTERROGATORY NO. 12:**

Identify in detail all damages claimed by adidas, including any lost sales, lost profits or other damages and the basis therefore, based on any alleged infringement by the Jonah shoe.

**RESPONSE:** In addition to the general objections, adidas objects to this interrogatory on the ground that much of the information necessary to calculate adidas's damages is within the possession, custody, or control of Defendant or its licensees, and has not yet been produced. adidas further objects to this interrogatory on the ground that it violates Local Rule 33.1(d), which states that contention interrogatories are not permitted. Subject to these objections, adidas responds that it is entitled to recover the profits obtained by Defendant, its licensees, and Target Corporation. adidas will supplement this response as appropriate once it has received profits information from Defendant's licensee and more detailed financial information from Defendant.

**INTERROGATORY NO. 13:**

Describe all testing and the results thereof of the Mikal and Jonah shoes for quality and/or durability.

7-   PLAINTIFFS' RESPONSES TO
     BUM'S FIRST INTERROGATORIES

PERKINS COIE LLP
1211 S.W. FIFTH AVENUE, SUITE 1500
PORTLAND, OREGON 97204
(503) 727-2000

EXHIBIT __2__ Page __6__ of __6__

```
1                IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF OREGON

3

4    ADIDAS AMERICA, INC., et al.,      )
                                        )
5           Plaintiffs,                 )   CR NO. 3-01-01582-ST
        vs.                             )
6                                       )
     TARGET CORPORATION, et al.,        )   January 15, 2002
7                                       )   Portland, Oregon
            Defendants.                 )
8                                       )
                                        )
9    _____

10

11               TRANSCRIPT OF PROCEEDINGS

12

13           Before The Honorable Janice M. Stewart
                 United States Magistrate Judge

14

15                        APPEARANCES:

16   For the Plaintiffs:        Mr. Jerre B. Swann
                                Kilpatrick Stockton LLP
17                              1100 Peachtree Street, Ste 2800
                                Atlanta, GA  30309

18                              Mr. Stephen M. Feldman
                                Perkins Coie LLP
19                              1211 SW Fifth Avenue, Ste 1500
                                Portland, OR  97204

20
     For the Defendants:        Mr. Milo Petranovich
21                              Mr. Kenneth R. Davis, II
                                Lane Powell Spears Lubersky LLP
22                              601 SW Second Avenue, Ste 2100
                                Portland, OR  97204

23
                                Mr. Vincent Henry Chieffo
24                              Greenberg Traurig, LLP
                                2450 Colorado Avenue, Ste 400E
25                              Santa Monica, CA  90404
```

EXHIBIT 3 Page 1 of 6

1   In-House Counsel for Adidas:    Mr. Michael Heilbronner

2   Transcript Requested By:        Messrs. Feldman and Petranovich

3

    Courtroom Deputy:               Donna Ausbie

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
                        *Yuki Ogawa Transcription Service*
23                          *15411 SE Rivercrest Drive*
                            *Vancouver, WA 98683-5353*
24      *Tele: (360) 260-0432 Fax:  (360) 260-0432 email: ogawa99@msn.com*

25

EXHIBIT 3 Page 2 of 6

62

1   the survey, there can be confusion without secondary meaning.

2   The survey may be limited to the stripes, but the stripes are

3   a key element of the trade dress.  We have quoted from

4   articles, we have pointed out some - but Your Honor can just

5   take, I think, you know, every trademark case I think you

6   need to take a little bit of a saltshaker and shake some

7   common sense on it.

8       Your Honor knows from experiences in the marketplace that

9   the Nike swoosh is not a weak symbol that consumers don't

10  respond to.  Unfortunately, from our standpoint, they respond

11  to it sometimes more strongly than we would like.  But we

12  have the three stripes out there, and we have the superstar

13  trade dress that resulted in hundreds of millions of dollars

14  of sales last year alone.

15      Your Honor, I ----

16          THE COURT:  Let me ask you this.  You keep talking

17  about sales.  Just because you have strong sales does not

18  mean that you have projectable trade dress.  It means you've

19  been successful in selling a particular product.  But I mean

20  you need more than that on a secondary meaning.  I assume

21  that you're conceding that.

22          MR. SWANN:  Oh, yes, Your Honor, it's only one

23  indicia.  Sales are one indicia, advertising is one indicia,

24  survey evidence is one indicia, third-party recognition is

25  one indicia.

EXHIBIT 3 Page 3 of 6

1          THE COURT:  Let me ask you about the argument that

2     was made that you need image advertising on trade dress, and

3     that you don't have that, all you have are photo's of your

4     product.  And that's not the kind of image advertising that

5     the courts talk about.  How do you respond to that?

6          MR. SWANN:  I think Your Honor, I respond to it

7     exactly the way Your Honor responded to it.  Image

8     advertising certainly is one way to show that a design has

9     acquired secondary meaning.  But designs that have been in

10    the marketplace as long as the superstar design, and the Coke

11    bottle, and the Rolls Royce grill, and any number of other

12    designs, the Rolex watch.  Rolex doesn't say, look for our

13    watch, it has that big heavy gold band, and all of that stuff

14    on it.  You don't need to.  Those designs are so well known

15    in the marketplace, they've been around so long, they have

16    such immediate recognition in the marketplace, that the fact

17    that you have depicted them thousands and thousands and

18    thousands of times over is strong evidence of secondary

19    meaning, and the cases say that, Your Honor.  That's what the

20    cases say.

21         Now, does advertising alone establish secondary meaning?

22    No.  Does sales alone establish secondary meaning?  No.  Do

23    third-party mentions in newspapers and magazines alone?  No.

24    Do, well that, they probably do.  The surveys.  Certainly I

25    would think that the survey is a conclusive indicator of

EXHIBIT 3 Page 4 of 6

64

1    secondary meaning.  But certainly all of this in combination

2    is extremely strong evidence of secondary meaning, certainly

3    we have fact issue.  Certainly we have a fact issue as to the

4    likelihood of conclusion --  A likelihood of confusion.

5        Particularly if you look at the right marketplaces, if

6    you look at the free interest - the presale marketplace, the

7    initial interest marketplace.  And if you look at the post-

8    sale confusion marketplace.  We have demonstrated that there

9    are factual issues.  We come in with a survey on the issue.

10       It's extremely rare that you can go out and get survey

11   evidence on such short notice as we were able to do, that ---

12   -

13           THE COURT:  Well let me ask you another question

14   about survey, because the argument is you have to distinguish

15   trade dress from trademark, and you don't have a survey on

16   trade dress.  Do you agree with that?

17           MR. SWANN:  Your Honor, as I explained to you,

18   because we don't yet know what respondents to talk to ----

19           THE COURT:  Right.  Right.

20           MR. SWANN:  -- we have not done that, but there are

21   several responses to that.  That's only one way - survey

22   evidence is only one way to do it.  Now the one to three

23   stripes is the critical component of the trade dress, so it

24   does have bearing in that regard.

25       No. 2, we have offered all kinds of other evidence of

EXHIBIT 3 Page 5 of 6

65

1    secondary meaning in the form of not only sales and

2    advertising, but I think as third party mentions, Your Honor,

3    it's very rare that you have a newspaper or a magazine that

4    talks about how well known particular features of a trade

5    dress are.

6        Third party mentions are some of the strongest evidence

7    that you can possibly have of secondary meaning.  And we will

8    bring in articles -----

9        THE COURT:  What about on a consumer confusion

10   issue?  Because the argument there is that you don't have

11   anything on consumer confusion on the trade dress.

12       MR. SWANN:  Your Honor, the strongest thing that we

13   have I think on consumer confusion are the illustrations that

14   we have in our brief where we have shown our product, and

15   we've shown their product, and I think that the inference

16   that can be drawn from that is that if consumers are likely

17   as we have shown to be confused by three stripes and four

18   stripes, then the fact that they have adopted even more than

19   that, that they've gone beyond, that they have the flat sole,

20   that they have this shell toe, that they have the insignia on

21   the back of the heel, that the confusion would simply be

22   greater.  The evidence shows that just taking one, and it's

23   the central, it's the primary, but just taking one element of

24   the trade dress has created confusion.

25       And that is the one element of the trade dress that they

EXHIBIT 3 Page 6 of 6

## SETTLEMENT AGREEMENT

This Agreement is effective as of the last date signed below among adidas AG, a joint stock company organized and existing under the laws of the Federal Republic of Germany, with its office and principal place of business in Herzogenaurach, Germany, adidas America, Inc. a Delaware corporation with its principal place of business in Portland, Oregon (collectively referred to herein as "Adidas"); and Payless ShoeSource, Inc. ("Payless"), a Missouri corporation with its principal place of business in Topeka, Kansas.

WHEREAS, Adidas filed an action in the United States District Court for the Eastern District of New York, Civil Action No.: 94 CIV. 3424 (Wexler) (the "Action"), alleging that it owns exclusive trademark rights in a certain three stripe design for athletic footwear (the "THREE STRIPE DESIGN"), which Adidas has registered as a trademark in the United States Patent and Trademark Office as Reg. No. 1,833,868, and that Payless infringed those rights by selling a certain style of footwear bearing three stripes, a copy of which is attached as Exhibit A (the "PSS 3-stripe Shoes");

WHEREAS, Adidas further alleged that the sale of certain Payless footwear bearing four parallel double serrated stripes ("PSS 4-stripe Shoes") infringes Adidas' THREE STRIPE DESIGN;

WHEREAS, Payless denies that it has committed any acts of infringement against Adidas; and

WHEREAS, the parties to this Action have reached this agreement to resolve this matter amicably and without the cost, risk and inconvenience of protracted litigation;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows:

1.   Payless agrees to refrain from placing any further orders for the PSS 3-Stripe Shoes or the PSS 4-Stripe Shoes.   Adidas agrees that Payless may sell its remaining inventory of approximately 49,126 pair of PSS 4-Stripe Shoes.   Payless shall, at its option, donate the remaining PSS inventory of approximately 944 pair of PSS 3-Stripe Shoes to charity, or otherwise dispose of such shoes.

2.   Payless acknowledges Adidas' ownership of the THREE STRIPE DESIGN, and agrees, except as otherwise provided herein, not to order, sell or manufacture athletic shoes bearing three substantially straight parallel stripes on the side of the shoe running diagonally from the outsole forward to the lacing area.

3.   Payless further agrees that it will not, except as otherwise provided herein, order or sell athletic shoes bearing two or four parallel double-serrated stripes of contrasting color

EXHIBIT 4 Page 1 of 4

running diagonally from the outsole forward to the lacing area.

4.    Payless agrees that Adidas shall be entitled to obtain injunctive relief for any material breaches of the agreements contained in Paragraph 2 above. Payless further agrees that Adidas will be entitled to recover its reasonable costs and attorneys' fees for breach of Paragraph 2 of this Agreement, and that Payless will pay Adidas liquidated damages of the lesser of $███████ or two times Payless' pretax profits on any such sales as its exclusive monetary remedy if Payless materially breaches Paragraph 2 of the Agreement. If Payless wilfully and materially breaches Paragraph 3 of this Agreement, Payless agrees that Adidas will be entitled to recover its proveable damages and its reasonable costs and attorneys' fees. Payless agrees that it will promptly notify its buyers of the terms of this Agreement. Adidas agrees that the Payless obligations set forth in Paragraphs 1, 2 and 3 shall remain in effect so long as Adidas diligently and aggressively acts to enforce similar restrictions against other retailers in the United States.

5.    Payless shall, within ten business days after execution of this Agreement, send to Adidas' attorney a check in the amount of ███████████████ ($███████ made payable to "Adidas America, Inc." (the "Payment"). The Payment is not an admission of any liability, but is made solely to avoid the expense, inconvenience and uncertainty of further litigation. Adidas shall, before cashing the Payment, file a Stipulation for Dismissal with Prejudice of the Action, and mail to Payless' attorney a file-stamped copy of this Dismissal.

6.    Payless represents that its sales of the PSS 3-Stripe Shoes amounted to not more than 30,000 pair, and resulted in pre-tax profits less than or equal to the sum of $███████████, and that it has remaining inventory of approximately 944 pair of Payless 3-Stripe Shoes, and approximately 49,126 pair of Payless 4-Stripe Shoes, as of November 26, 1994.

7.    Adidas, for itself and for all of its parent, subsidiary and related corporations and entities, their officers, directors, employees and anyone claiming through or under them, hereby releases Payless, and all its parent, subsidiary and related corporations and entities, their officers, directors and employees, of and from all claims whatsoever that Adidas has brought or could have brought in the Action, known or unknown, and whether or not asserted, including all claims for damages or injunctive relief relating to the manufacture, importation, purchase, offer for sale, sale, advertising or distribution of the Payless 3-Stripe Shoes or the Payless 4-Stripe Shoes.

8.    Neither the Payment nor this Agreement shall be construed as any admission of liability by Payless, nor shall the Payment or this Agreement be construed as any acknowledgement of any

2

EXHIBIT 4 Page 2 of 4

protectable trade dress rights belonging to Adidas. Payless denies all such liability and trade dress rights, and have made this Agreement and the Payment solely to avoid the expense and inconvenience of further litigation.

9. The parties expressly agree that this Agreement, and all the terms hereof, are confidential and shall not be disclosed to third parties except as required by law or as necessary to implement the terms of this Agreement. Notwithstanding this provision, Adidas may issue a press release which states the following (or such other language as the parties may agree):

Adidas and Payless ShoeSource, Inc. have reached an agreement to resolve a lawsuit Adidas filed in federal court in the Eastern District of New York, in which Adidas alleged that Payless had sold footwear that infringed Adidas three-stripe trademark. Payless has acknowledged Adidas' ownership of the three-stripe trademark for athletic footwear, but the terms of the Agreement are otherwise confidential.

10. This Agreement constitutes a complete understanding among the parties. No amendments to this Agreement shall be binding unless signed by all of the parties.

11. This Agreement may be executed in several counterparts, and any copy of this Agreement with a complete set of counterpart signatures shall be deemed a complete and original Agreement for all purposes. The parties signing this Agreement represent and acknowledge that they have full authority to enter into this Agreement on behalf of the party for whom they signed.

DATE: _12.15.94_

ADIDAS AMERICA, INC.

BY: _Peter Moore_
ITS: _CEO and President_

DATE: _12.15.94_

ADIDAS AG

BY: _Peter Moore_
ITS: _CEO and President_

DATE: _12/7/94_

PAYLESS SHOESOURCE, INC.

BY: Gerald F. Kelly, Jr.
ITS: Senior Vice President Information Services
And Finance

3

EXHIBIT _4_ Page _3_ of _4_

A



EXHIBIT 4 Page 4 of 4