1  NEIL D. GREENSTEIN (SBN 123980)
   Telephone (408) 280-2229 Ext. 124
2  ROBERT M. VANTRESS (SBN 106442)
   Telephone: (408) 280-2227 Ext. 213
3  TECHMARK
   Market Post Tower
4  55 South Market Street
   Sixteenth Floor
5  San Jose, CA 95113
   Facsimile: (408) 358-9240
6
   Attorneys for Plaintiff
7  K-SWISS INC.

**RECEIVED**

AUG 3 0 2004

Lathrop & Gage L.C.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12  | K-SWISS INC., a Delaware corporation | Case No.: CV04-779 RJK (RCx) |

13  K-SWISS INC., a Delaware corporation

14                    Plaintiff,

15            v.

16  PAYLESS SHOESOURCE, INC., a
17  Missouri corporation, and PAYLESS
18  SHOESOURCE, INC., a Delaware
    Corporation
19
20            Defendant.
21

Case No.: CV04-779 RJK (RCx)

**PLAINTIFF'S SECOND
REQUEST FOR THE
PRODUCTION OF
DOCUMENTS TO
DEFENDANT PAYLESS
SHOESOURCE-MISSOURI**

22  PROPOUNDING PARTY:      Plaintiff K-Swiss Inc. ("K-Swiss")

23  RESPONDING PARTY: Defendant Payless Shoesource, Inc., a Missouri

24                      Corporation ("Payless-Missouri")

25  SET NO.:        Two (2)

26       Plaintiff K-Swiss Inc. ("K-Swiss") hereby requests that Responding Party

27  respond to the following requests for production of documents and tangible things

28  and to produce such documents and tangible things at the offices of TECHMARK,

EXHIBIT A

1    74. Any and all purchase orders, sales slips, invoices, receipts, shipping

2    documents, or other DOCUMENTS REGARDING YOUR purchase of the

3    SUBJECT SHOES.

4    75. Any and all DOCUMENTS REGARDING YOUR agreement to

5    purchase the SUBJECT SHOES.

6    76. Any and all DOCUMENTS REGARDING the marketing, distribution,

7    advertisement, promotion or sale of any of the SUBJECT SHOES.

8    77. Any and all DOCUMENTS or evidence REGARDING any knowledge

9    by YOU of K-Swiss' reputation or goodwill in its designs, trademarks or The K-

10   Swiss Trade Dress.

11   78. Any and all DOCUMENTS REGARDING any of K-Swiss' allegations

12   in any cease and desist letter or any litigation it brought against YOU prior to the

13   commencement of this case.

14   79. Any and all DOCUMENTS discussing, referring to, or analyzing any

15   potential purchase, design or manufacture or sales of any shoe incorporating

16   parallel stripes.

17   80. Any and all DOCUMENTS discussing, referring to, or analyzing any

18   potential purchase, design or manufacture or sales of any shoe similar in any way

19   (including, without limitation, shoes with four stripes) to any shoe manufactured,

20   sold or offered for sale by K-Swiss.

21   81. Any and all DOCUMENTS discussing, referring to, or analyzing any

22   potential issues, concerns or potential liability issues REGARDING the purchase,

23   design or manufacture or sales of any shoe because of the terms of the 1992

24   Settlement Agreement between YOU and K-Swiss.

25   82. All pleadings in the litigation brought against YOU in the U.S. District

26   Court for the District of Oregon, captioned Adidas America, Inc. and

27   Adidas-Salomon AG v. Payless ShoeSource, Inc.

28   83. All pleadings in the litigation brought against YOU in the U.S. District

1    NEIL D. GREENSTEIN (SBN 123980)
     TECHMARK
2    1917 Palomar Oaks Way, Suite 300
     Carlsbad, CA 92008
3    Telephone (408) 280-2228
     Facsimile: (408) 280-2250
4
     ROBERT M. VANTRESS (SBN 106442)
5    TECHMARK
     Market Post Tower, Suite 1630
6    55 South Market Street
     San Jose, CA 95113
7    Telephone: (408) 280-2228
     Facsimile: (408) 280-2250
8
     Attorneys for Plaintiff
9    K-SWISS INC.

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  WESTERN DIVISION

13

14

15   K-SWISS INC., a Delaware corporation       Case No.: CV04-779 RJK (RCx)

16                                               **PLAINTIFF'S FOURTH**
                  Plaintiff,                     **REQUEST FOR THE**
16                                               **PRODUCTION OF**
                                                 **DOCUMENTS TO**
17          v.                                   **DEFENDANT PAYLESS**
                                                 **SHOESOURCE-MISSOURI**
18   PAYLESS  SHOESOURCE,  INC.,  a
19   Missouri corporation,

20                                               Judge: Hon. Robert J. Kelleher
                  Defendant.
21

22

23

24

25

26

27

28

                                                 EXHIBIT B

1    the same pattern, visual design features, or style.

2        188.   All DOCUMENTS, from January 1, 2000 to the present,

3    memorializing any shopping, store or field trip by a Payless employee designed to

4    assess what customers want, what customers are wearing on their feet, what the

5    competition is selling, or what other shoe retailers or manufacturers are doing in

6    the marketplace, including reports, handwritten or type notes, summaries, logs or

7    emails.

8        189.   All DOCUMENTS REGARDING any investigation into K-Swiss

9    rights, including, but not limited to, trademark summaries, trademark search

10   reports and surveys.

11       190.   All transcripts of testimony given by Payless empoyees or agents in

12   any litigation which alleged trademark or trade dress infringement by Payless,

13   including, without limitation, the transcripts of testimony by Shad Stanley and

14   Cathy Bowles in the addidas case pending in the U.S. District Court for the

15   District of Oregon.

16       191.   All discovery requests, responses, and productions in all litigation

17   alleging trademark or trade dress infringement by Payless, including the addidas

18   case.

19       192.   All training materials, slide shows, presentations, literature, circulars,

20   memos or other DOCUMENTS shown to or given to Payless buyers to avoid the

21   design or purchase of shoes which infringe the rights of others.

22       193.   All DOCUMENTS discussing or describing any policy, strategy or

23   procedure, for purchasing or designing shoes which are similar to more expensive

24   branded shoes sold by other manufacturers, without infringing the rights of such

25   other manufacturers.

26       194.   All DOCUMENTS discussing or describing any policy, strategy or

27   procedure, for purchasing or designing shoes that have four parallel stripes rather

28   than three or five stripes.

- 10 -

1  NEIL D. GREENSTEIN (SBN 123980)
   TECHMARK
2  1917 Palomar Oaks Way, Suite 300
   Carlsbad, CA 92008
3  Telephone (408) 280-2228
   Facsimile: (408) 280-2250
4
   ROBERT M. VANTRESS (SBN 106442)
5  TECHMARK
   Market Post Tower, Suite 1630
6  55 South Market Street
   San Jose, CA 95113
7  Telephone: (408) 280-2228
   Facsimile: (408) 280-2250
8
   Attorneys for Plaintiff
9  K-SWISS INC.

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

14

15  K-SWISS INC., a Delaware corporation       Case No.: CV04-779 RJK (RCx)

16                                             **PLAINTIFF'S**
                   Plaintiff,                  **SUPPLEMENTAL RESPONSES**
                                               **TO FIRST SET OF**
17          v.                                 **INTERROGATORIES OF**
                                               **DEFENDANT PAYLESS**
18  PAYLESS  SHOESOURCE,  INC.,  a             **SHOESOURCE-MISSOURI**
19  Missouri corporation, and PAYLESS
    SHOESOURCE,   INC.,   a   Delaware
20  Corporation
21
                   Defendant.
22

23

24

25

26

27

28

                                             EXHIBIT C

PROPOUNDING PARTY:      Defendant Payless Shoesource, Inc., a Missouri
                        Corporation ("Payless-Missouri")
RESPONDING PARTY:       Plaintiff K-Swiss Inc. ("K-Swiss")
SET NO.:                One (1)

Responding Party responds, answers and objects to Propounding Parties'
First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Responding Party objects to these Interrogatories to the extent that
they seek information which is protected by the attorney-client privilege or which
constitutes attorney work product, which seeks to violate or disclosure of which
may violate the privacy rights of third parties, or which is otherwise protected
from disclosure, and Responding Party will not provide such information.

2.      Responding Party objects to providing information constituting
proprietary or confidential business information or trade secrets, including but not
limited to information about Responding Party's customers, except pursuant to the
protective order entered by the Court.

3.      To the extent Responding Party agrees to produce documents, under
Rule 33 (c), Responding Party will make a reasonable and diligent search for those
documents reasonably within its possession, custody or control.  Responding Party
reserves the right to supplement its responses from time to time in the event that it
discovers additional information responsive to these Interrogatories, and also
reserves the right to supplement any response or any objections.

4.      Responding Party objects to each and every Interrogatory or
instruction by plaintiff which imposes or attempts to impose greater obligations on
Responding Party than those authorized by or required by the Federal Rules of
Civil Procedure.

5.      Responding Party objects to the Interrogatories to the extent that they
mischaracterize Responding Party, or any fact alleged by Responding Party.  By

- 1 -

1  responding to these Interrogatories, Responding Party does not admit that
2  plaintiff's characterizations are accurate or correct.

3      6.    These general objections are applicable to and incorporated into each
4  specific response herein without further reference. Assertion of specific
5  objections in the response to any Interrogatories shall not be construed as a waiver
6  of these general objections in that or any other response.

7      7.    Responding Party objects to the definition of "Plaintiff" to the extent
8  that it includes persons and entities not within the control of Responding Party and
9  persons not known to Responding Party.

10      8.    Responding Party's inquiries and discovery are ongoing. Responding
11  Party therefore objects to the Interrogatories to the extent that they purport to cut
12  off or may have the effect of cutting off Responding Party's right to supplement its
13  responses. Responding Party reserves its right to supplement its responses from
14  time to time.

15      9.    Responding Party objects to the definitions regarding identification of
16  "Entities" or "Persons" as being unduly burdensome and oppressive and necessary
17  creating interrogatories with subparts or which are compound and conjunctive and
18  because they cause the number of permissible interrogatories to be exceeded.

19      10.   Responding Party has given information that is available to plaintiff,
20  where appropriate because such information is available to Responding Party upon
21  reasonable and diligent investigation. Nothing in these answers shall be deemed
22  to imply that Responding Party itself engaged in the acts described in these
23  answers, unless specifically so stated.

24  **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**
25  **INTERROGATORY NO. 1.:**

26      Define and describe each of the features and elements of the trade dress of
27  the Classic shoe and state the first and last dates Plaintiff sold shoes embodying
28  the trade dress of the Classic shoe in the United States.

- 2 -

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to this interrogatory on the grounds that it is overbroad and unduly burdensome and oppressive in that some of this interrogatory is not relevant to the subject matter of this action nor likely to lead to the discovery of admissible evidence. Without waiving this objection, Responding Party responds as follows:

Plaintiff's trade dress consists of two or more of the following features: Four or five parallel stripes, D-Rings, and the Toe Box Design copied by Defendant. In addition, infringers, such as Payless, have copied other elements of K-Swiss shoes to intentionally confuse purchasers. These other copied features include the number and placement of holes in the shoes, the placement of logos on shoes, the collar design, piping on the side of stripes, and the color contrasting and color schemes. K-Swiss' trade dress is further described in the complaint in this action. The date of first use of this trade dress is on or about July 15, 1967. K-Swiss further states that it has sold shoes bearing its trade dress continuously since prior to Payless' copying and still sells shoes bearing its trade dress.

**INTERROGATORY NO. 2:**

Define and describe each of the features and elements of the trade dress of the Nido shoe and state the first and last dates Plaintiff sold shoes embodying the trade dress of the Nido shoe in the United States.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to this interrogatory on the grounds that it is overbroad and unduly burdensome and oppressive in that some of this interrogatory is not relevant to the subject matter of this action nor likely to lead to the discovery of admissible evidence. Without waiving this objection, Responding Party responds as follows:

Plaintiff's trade dress on the Nido shoe is the Classic trade dress and consists of two or more of the following features: Four or five parallel stripes, D-

1  Rings, and the Toe Box Design copied by Defendant.  In addition, infringers, such

2  as Payless, have copied other elements of K-Swiss shoes to intentionally confuse

3  purchasers.  These other copied features include the number and placement of

4  holes in the shoes, the placement of logos on shoes, the collar design, piping on

5  the side of stripes, and the color contrasting and color schemes.  K-Swiss' trade

6  dress is further described in the complaint in this action.  The Nido trade dress is

7  the same as the Classic trade dress but the shoes also have piping on the stripes.

8  Thus, the date of first use of this trade dress is also on or about July 15, 1967.  K-

9  Swiss started using the piping on the stripes in December 2002.  K-Swiss further

10  states that it has sold shoes bearing its trade dress continuously since prior to

11  Payless' copying and still sells shoes bearing its trade dress.

12

13  Dated:  March 31, 2005                    As to Objections:

14                                            NEIL D. GREENSTEIN
                                             ROBERT M. VANTRESS
15                                            TECHMARK

16                                            By: _____
17                                                Neil D. Greenstein
                                                 Attorneys for K-Swiss Inc.
18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE BY FIRST CLASS MAIL**

I, Debi Shump, declare:

I am a citizen of the United States, over the age of eighteen years, and not a party to this action. My business address is 1917 Palomar Oaks Way, Suite 300, Carlsbad, California 92008.

On March 31, 2005, I served the following items: **PLAINTIFF'S SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES OF DEFENDANT PAYLESS SHOESOURCE-MISSOURI** on the person(s) identified as follows:

Donald J. Putterman, Esq.
Michelle L. Landry, Esq.
Jennifer K. Moshier, Esq.
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Eighth Floor
San Francisco, CA 94111

William R. Hansen, Esq.
Lathrop & Gage, L.C.
230 Park Avenue #1847
New York, NY 10169

William Rudy, Esq.
David V. Clark, Esq.
Lathrop & Gage
2345 Grand Blvd #2800
Kansas City, MO 64108

by placing said items in sealed envelopes, first class mail, postage prepaid, and depositing said envelopes in a United States Post Office mailbox for mailing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of March, 2005, in California.

Debi Shump

- 5 -

**Stephen M. Feldman, OSB No. 93267,** sfeldman@perkinscoie.com
**Thomas R. Johnson, OSB No. 01064,** trjohnson@perkinscoie.com
PERKINS COIE LLP
1211 Southwest Fifth Avenue, Suite 1500
Portland, OR 97204-3715
Phone: (503) 727-2058
Fax: (503) 727-2222

        Attorneys for Plaintiffs

**Jerre B. Swann,** jswann@kilpatrickstockton.com
**R. Charles Henn, Jr.,** chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

        Of Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC. and ADIDAS-SALOMON AG,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>                    Defendant. | NO. CV03- 1116 AS<br><br>**COMPLAINT** (Trade Dress Infringement, Trade Dress Dilution, Unfair Competition, and Deceptive Trade Practices)<br><br>**DEMAND FOR JURY TRIAL** |

1-   COMPLAINT

[09901-0001/PA032240.064]

Plaintiffs adidas America, Inc. and adidas-Salomon AG (collectively "adidas" or "Plaintiffs") state the following for their complaint against Payless ShoeSource, Inc. ("Payless" or "Defendant"):

1.    This is an action at law and in equity for trade dress infringement and dilution, injury to business reputation, unfair competition and deceptive trade practices, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (1994) ("Lanham Act"); the antidilution laws of the several states, including the Oregon antidilution statute, O.R.S. § 647.107 (1988); the fair business practices and unfair and deceptive trade practices acts of the several states, including the Oregon Unlawful Trade Practices Act, O.R.S. §§ 646.605 to 646.656 (1997); and the common law.

2.    Defendant is offering for sale and selling footwear that bears confusingly similar imitations of Plaintiffs' MEI Trade Dress. Defendant's footwear is not manufactured by adidas, nor is Defendant connected or affiliated with, or authorized by, adidas in any way. Defendant's merchandise is likely to cause confusion and to deceive consumers and the public regarding its source, and dilutes and tarnishes the distinctive quality of adidas's trade dress.

### JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over Plaintiffs' related state and common-law claims pursuant to 28 U.S.C. §§ 1338 and 1367. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has distributed or sold infringing merchandise within this State, has engaged in acts or omissions within this State causing injury, has engaged in acts or omissions outside of this State causing injury within this State, has manufactured or distributed products used or

2-  COMPLAINT

consumed within this State in the ordinary course of trade, or has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction. This District is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

5.     Plaintiff adidas-Salomon AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postfach 1120, D-91072 Herzogenaurach, Federal Republic of Germany.

6.     Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217. adidas America, Inc., is wholly owned by adidas-Salomon AG and its affiliates, and within this country adidas America is a licensed distributor of ADIDAS brand merchandise, including goods bearing the distinctive Three-Stripe trademark and the famous and distinctive MEI Trade Dress. Plaintiffs adidas-Salomon AG and adidas America, Inc., and any predecessors or related entities, are collectively referred to as "adidas."

7.     On information and belief, Defendant Payless ShoeSource, Inc. is a Missouri corporation with a principal place of business at 3231 East Sixth Street, Topeka, Kansas 66607.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     The World-Famous Three-Stripe Mark

8.     adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, sportswear, and sporting equipment. Over forty years ago, adidas first placed three parallel bands on its athletic shoes, and the Three-Stripe Mark came to signify the quality and reputation of adidas footwear to the sporting world early in the company's history.

3-  COMPLAINT

9.    At least as early as 1952, adidas began using the Three-Stripe Mark on athletic footwear sold in the United States and worldwide. Pages from adidas catalogs featuring footwear bearing the Three-Stripe Mark are attached as Exhibit 1.

10.    adidas-Salomon AG is the owner of a federal trademark registration, Reg. No. 1,815,956, issued by the United States Patent and Trademark Office on January 11, 1994, for the Three-Stripe Mark, as depicted below, for "athletic footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as Exhibit 2.

11.    adidas-Salomon AG is the owner of a federal trademark registration, Reg. No. 1,833,868, issued by the United States Patent and Trademark Office on May 3, 1994, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of the Certificate of Registration for this mark is attached as Exhibit 3.

4-   COMPLAINT

12.    adidas-Salomon AG is the owner of a federal trademark registration, Reg. No. 2,278,589, issued by the United States Patent and Trademark Office on September 21, 1999, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



A copy of the Certificate of Registration for this mark is attached as Exhibit 4.

13.    adidas also owns numerous additional trademark registrations for the Three-Stripe Mark covering footwear and various items of apparel including U.S. Reg. Nos. 870,136, 961,353, 2,016,963, and 2,058,619. A copy of the Certificate of Registration for each of these marks is attached as Exhibit 5.

14.    Plaintiffs' Three-Stripe Mark is well known and famous and has been for many years. Plaintiffs have used the Three-Stripe Mark in connection with their frequent sponsorship of sports tournaments and organizations, as well as professional athletes and collegiate sports teams. For example, adidas has long-term relationships with the New York Yankees, Notre Dame, the University of California at Los Angeles, the University of Nebraska, and the University of Tennessee. Among many others, NBA stars Tracy McGrady, Kevin Garnett and Tim Duncan, professional golfer Sergio Garcia, baseball great Nomar Garciaparra, and American soccer star Eddie Pope all are sponsored by adidas. For many years, adidas has been a sponsor of the World Cup soccer tournament, has sponsored the world-famous Boston Marathon for more than a decade, and has sponsored many other events, teams, and individuals. Prominent use of the Three-Stripe Mark in connection with these sponsorship activities has further enhanced the mark's recognition and fame.

5-    COMPLAINT

15.    The Three-Stripe Mark is non-functional, and the public well recognizes and understands that the Three-Stripe Mark distinguishes and identifies adidas merchandise. Indeed, unsolicited media coverage has referred to "the classic Adidas Three Stripe motif." (Tennis, July 1997, at 20). adidas also owns federal registrations for verbal trademarks using the term "three stripe" including THE BRAND WITH THE THREE STRIPES, Reg. No. 1,674,229, for sport and leisure wear. A copy of the Certificate of Registration for this mark is attached as Exhibit 6.

16.    For decades, adidas has extensively and continuously used and promoted the Three-Stripe Mark in connection with athletic footwear and sportswear. In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States. The Three-Stripe Mark has achieved international fame and tremendous public recognition.

**B.    The MEI Trade Dress**

17.    Building on the success of the Three-Stripe Mark in the athletic footwear market, adidas developed a new footwear model in 2001, which adidas called the "Mei." This design marked a successful attempt to develop footwear that has an athletic feel, yet is uniquely targeted to a more trendy, fashion-conscious consumer.

18.    adidas's Mei shoe is a popular shoe that features a distinctive appearance, including a unique combination of stripes on the side and wrapping around underneath the shoe, small perforated scattered holes spread around the upper of the shoe, a camel-colored rubber sole that rises in two places along the side of the shoe, and a laceless tongue with a hole or "pull," (collectively, the "MEI Trade Dress"), as depicted below:



6-    COMPLAINT

[09901-0001/PA032240.064]

19.    adidas's Mei shoe was released as a part of adidas's Spring 2002 line, and it was first shipped into the United States in material quantities in February of 2002. The Mei already has achieved a high degree of fame. adidas has sold millions of dollars worth of Mei shoes within the United States in the last eighteen months, and trends show that these sales are expected to increase in the future.

20.    Since December 2001, the Mei shoe has garnered media attention as having a fresh, cool look popular to a wide segment of the public. The shoe has been featured in such magazines as Glamour, Vogue, Elle, New York Magazine, and Sports Illustrated Women, as well as many others. Moreover, the Mei received Time Magazine's award for "Shoe of the Year" in 2002, and the Mei also was on Oprah Winfrey's list of favorite things for Spring 2003. Copies of documents reflecting these honors are attached as Exhibit 7.

### DEFENDANT'S UNLAWFUL ACTIVITIES

21.    On information and belief, Defendant Payless is a retailer that is distributing, offering for sale and selling goods in interstate commerce that bear a confusingly similar imitation of Plaintiffs' MEI Trade Dress, including the footwear depicted below:



22.    Plaintiffs used the MEI Trade Dress extensively and continuously before Defendant began using confusingly similar imitations of Plaintiffs' footwear.

7-    COMPLAINT

[09901-0001/PA032240.064]

23.     The goods sold by Defendant are similar to and compete with goods sold by Plaintiffs, and are sold through overlapping channels of trade.

24.     Defendant's use of confusingly similar imitations of Plaintiffs' MEI Trade Dress is likely to deceive, confuse and mislead prospective purchasers and purchasers into believing that footwear sold by Defendant is manufactured by, authorized by or in some manner associated with Plaintiffs, which it is not. The likelihood of confusion, mistake and deception engendered by Defendant's misappropriation of Plaintiffs' trade dress is causing irreparable harm to the goodwill symbolized by the MEI Trade Dress and the reputation for quality that it embodies.

25.     Defendant's activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers and others viewing Defendant's footwear at the point of sale or on a wearer are likely -- due to Defendant's use of confusingly similar imitations of the MEI Trade Dress -- to mistakenly attribute the product to adidas. This is particularly damaging with respect to those persons who perceive a defect or lack of quality in Defendant's products. By causing such a likelihood of confusion, mistake and deception, Defendant is inflicting irreparable harm to the goodwill symbolized by the MEI Trade Dress, and the reputation for quality that it embodies.

26.     Upon information and belief, Defendant continues to use confusingly similar imitations of adidas's MEI Trade Dress in connection with the sale of products that are directly competitive to those offered by adidas. Defendant began selling these imitations well after adidas had established protectable rights in the MEI Trade Dress.

27.     On information and belief, Defendant knowingly, willfully, intentionally and maliciously adopted and used confusingly similar imitations of the MEI Trade Dress.

### FIRST CLAIM FOR RELIEF
#### (Federal Unfair Competition)

28.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-27.

29.     Plaintiffs' MEI Trade Dress has acquired secondary meaning.

8-   COMPLAINT

30.    Defendant's use of knockoff duplicates or confusingly similar imitations of Plaintiffs' MEI Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Plaintiffs, or are affiliated, connected or associated with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

31.    Defendant has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' good will and reputation as symbolized by the MEI Trade Dress, for which Plaintiffs have no adequate remedy at law.

32.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' MEI Trade Dress to the great and irreparable injury of Plaintiffs.

33.    Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

### SECOND CLAIM FOR RELIEF
#### (Federal Dilution Of The Mei Trade Dress)

34.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-33.

35.    Plaintiffs have extensively and continuously promoted and used the MEI Trade Dress throughout the United States, and the MEI Trade Dress has thereby become a famous and well-known indicator of the origin of adidas's goods and services.

36.    Defendant is making commercial use in commerce of trade dress that dilutes the distinctiveness of Plaintiffs' MEI Trade Dress by eroding the public's exclusive identification of

9-   COMPLAINT

this famous trade dress with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the trade dress, and otherwise lessening the capacity of the trade dress to identify and distinguish goods and services.

37.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' MEI Trade Dress or to cause dilution of the MEI Trade Dress, to the great and irreparable injury of Plaintiffs.

38.    Defendant has caused and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive MEI Trade Dress in violation of 15 U.S.C. § 1125(c), and Plaintiffs therefore are entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116 and 1117.

### THIRD CLAIM FOR RELIEF
#### (State Trade Dress Dilution And Injury To Business Reputation)

39.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1-38.

40.    Plaintiffs have extensively and continuously promoted and used the MEI Trade Dress in the United States and in the State of Oregon, and it has become a distinctive and well-known symbol of adidas's goods and services.

41.    Defendant's unauthorized use of Plaintiffs' MEI Trade Dress dilutes the distinctiveness of this trade dress by eroding the public's exclusive identification of this distinctive trade dress with Plaintiffs, and tarnishing and degrading the positive associations and prestigious connotations thereof.

42.    Defendant is causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' distinctive MEI Trade Dress in violation of the Oregon antidilution act, OR. REV. STAT.

10- COMPLAINT

§ 647.107 (2001), as well as the antidilution laws of the several states, including Alabama, ALA. CODE § 8-12-17 (2003); Alaska, ALASKA STAT. §45.50.180 (Michie 2002); Arizona, ARIZ. REV. STAT. ANN. §44-1448.01 (West 2003); Arkansas, ARK. CODE ANN. § 4-71-213 (2002); California, CAL. BUS. & PROF. CODE § 14330 (West 003); Connecticut, CONN. GEN. STAT. ANN § 35-11i(c) (West 2003); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2002); Florida, FLA. STAT. ANN. § 495.151 (West 2003); Georgia, GA. CODE ANN. § 10-1-451 (2003); Hawaii, HAW. REV. STAT. ANN. §482-32 (Michie 2003); Idaho, IDAHO CODE § 48-513 (Michie 2002); Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2003); Iowa, IOWA CODE ANN. § 548.113 (West 2003); Kansas, KAN. STAT. ANN. § 81-214 (2002); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West 2003); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 2003); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110B, § 12 (West 2003); Minnesota, MINN. STAT. ANN. § 333.285 (West 2003); Mississippi, MISS. CODE. ANN. § 75-25-25 (2003); Missouri, MO. ANN. STAT. § 417.061(1) (West 2002); Montana, MONT. CODE ANN. § 30-13-334 (2003); Nebraska, NEB. REV. STAT. ANN. §87-140 (Michie 2002); New Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2003); New Jersey, N.J. STAT. ANN. 56:3- 13.20 (West 2003); ; New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie 2002); New York, N.Y. GEN. BUS. Law § 360-l (2003); Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124 (West 1996); Rhode Island, R.I. GEN. LAWS § 6-2-12 (1992); South Carolina, S. C. CODE ANN. § 39-15-1165 (2002); Tennessee, TENN. CODE ANN. § 47-25-513 (2003); Texas, TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2003); Utah, UT. CODE ANN. §70-3a-403 (2002); Washington, WASH. REV. CODE ANN. § 19.77.160 (2003); West Virginia, W. VA. CODE ANN. 47-2-13 (Michie 2003); and Wyoming, WYO. STAT. ANN. § 40-1-115 (Michie 2002). Plaintiffs therefore are entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

11- COMPLAINT

## FOURTH CLAIM FOR RELIEF
### (Common Law Trade Dress Infringement And Unfair Competition)

43.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-42.

44.    Defendant's acts constitute common law trade dress infringement and unfair competition, and have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiffs unless restrained by this Court. Plaintiffs have no adequate remedy at law for this injury.

45.    On information and belief, Defendant acted with full knowledge of Plaintiffs' use of, and statutory and common-law rights to, the MEI Trade Dress and without regard to the likelihood of confusion of the public created by Defendant's activities.

46.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' MEI Trade Dress to the great and irreparable injury of Plaintiffs.

47.    As a result of Defendant's acts, Plaintiffs have been damaged in an amount not as yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant's profits, to damages, and to costs. In light of the deliberately fraudulent and malicious use of confusingly similar imitations of Plaintiffs' MEI Trade Dress, and the need to deter Defendant from similar conduct in the future, Plaintiffs additionally are entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

48.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-47.

49.    Defendant has been and is passing off its goods as those of adidas, causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendant's goods, causing a likelihood of confusion as to Defendant's affiliation, connection or association with another, and otherwise damaging the public. Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade or commerce in violation

12- COMPLAINT

of Oregon's Unlawful Trade Practices Act, OR. REV. STAT. §§ 646.605 to 646.656 (1997), and the unfair and deceptive trade practices statutes of other states, including Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 1996 and Supp. 1998); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (1993 & Supp. 1998); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (1994); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (1993); Illinois, 815 ILL. COMP. STAT. ANN. 510/1 to 510/7 (1993); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 1996); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 1995); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (1995); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 1995); New York, N.Y. GEN. BUS. Law § 349 (McKinney 1988); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (West 1995); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 1995 & Supp. 1998).

50.    Defendant's unauthorized use of confusingly similar imitations of Plaintiffs' MEI Trade Dress has caused and is likely to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover damages, punitive damages, costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

1.    Defendant and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant be enjoined permanently, from:

   a.    using the MEI Trade Dress, or any other copy, reproduction, or colorable imitation or simulation of Plaintiffs' MEI Trade Dress on or in connection with Defendant's goods or services;

   b.    using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation,

13- COMPLAINT

or simulation of, or confusingly similar to, or in any way similar to the trade dress of Plaintiffs;

c.    using any trade dress, trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by, or are in any way connected or related to Plaintiffs;

d.    using any trade dress, trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that dilutes or is likely to dilute the distinctiveness of the trade dress, trademarks, service marks, names, or logos of Plaintiffs; and

e.    passing off, palming off, or assisting in passing off or palming off, Defendant's goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.    Defendant be ordered to recall all products bearing the MEI Trade Dress or any other confusingly similar variation thereof, which have been shipped by Defendant or under its authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant;

3.    Defendant be ordered to deliver up for impoundment and for destruction all footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the

14-  COMPLAINT

[09901-0001/PA032240.064]

control of Defendant that are found to adopt, to infringe, or to dilute any of Plaintiffs' trade dress or that otherwise unfairly compete with Plaintiffs and their products and services;

4.      Defendant be compelled to account to Plaintiffs for any and all profits derived by Defendant from the sale of infringing goods as described in this Complaint;

5.      Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

6.      Based on Defendant's knowing and intentional use of confusingly similar imitations of Plaintiffs' MEI Trade Dress, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.      Defendant be required to pay to Plaintiffs the costs of this action and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

8.      Based on Defendant's willful and deliberate infringement and dilution of Plaintiffs' trade dress, and to deter such conduct in the future, Plaintiffs be awarded punitive damages; and

9.      Plaintiffs have such other and further relief as the Court may deem just.

### JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

DATED:  August 14, 2003

PERKINS COIE LLP

By _____
     Stephen M. Feldman, OSB No. 93267
     Thomas R. Johnson, OSB No. 01064
     Telephone:  (503) 727-2000

Attorneys for Plaintiffs

15- COMPLAINT

[09901-0001/PA032240.064]

Jerre B. Swann
R. Charles Henn Jr.
**KILPATRICK STOCKTON LLP**
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Of Counsel for Plaintiffs

16- COMPLAINT

[09901-0001/PA032240.064]