Milo Petranovich, OSB No. 81337
petranovichm@lanepowell.com
Kenneth R. Davis, II, OSB No. 97113
davisk@lanepowell.com
LANE POWELL PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: (503) 778-2100
Facsimile: (503) 778-2200

Attorneys for Defendant Payless ShoeSource, Inc.

William A. Rudy (Admitted *pro hac vice*)
wrudy@lathropgage.com
David V. Clark, Esq. (Admitted *pro hac vice*)
dclark@lathropgage.com
(Additional attorneys listed at signature)
LATHROP & GAGE L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108-2612
Telephone: (816) 292-2000
Facsimile: (816) 292-2001

Of Counsel for Defendant Payless ShoeSource, Inc.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC., and ADIDAS-SALOMON AG,<br><br>               Plaintiffs,<br><br>v.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>               Defendant. | No. CV01-1655 KI (Lead Case)<br>Related Case CV03-1116 KI<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD**<br><br>By Defendant Payless ShoeSource, Inc.<br><br>Pursuant to Fed. R. Civ. P. 26 |

MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD

CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     LEGAL AUTHORITY .................................................................................... 5

III.    ARGUMENT .................................................................................................. 6

      A.      The Ford Report Should Be Stricken With Respect To Each Of The Shoe Styles Upon Which Dr. Ford Did Not Actually Conduct A Survey. ...................... 6

            1.      Dr. Ford's Failure To Conduct New Surveys Addressing The Newly Accused Lots Is Fatal To The Reliability Of His Report With Respect To Those Lots. ................................................................... 6

            2.      Dr. Ford's Reliance on Third Party Surveys As A Substitute For A Survey Addressing The Shoes Actually At Issue Is Improper. ................... 9

            3.      Dr. Ford Should Be Precluded From Offering Any Testimony Regarding The 109 Accused Lots That Are Omitted From His Report Entirely. ......................................................................................... 11

      B.      The Survey Dr. Ford Actually Did Conduct, Addressing the Alleged Superstar Imitations, Is Deficient In Several Ways. ........................................... 12

            1.      The Stimuli Used Does Not Replicate a Post-Sale Environment. ............ 12

            2.      The Claimed Trade Dress Was Not Isolated in the Stimuli. ...................... 14

            3.      The Structure of the Survey's Principal Question Was Leading. .............. 15

IV.     CONCLUSION .............................................................................................. 16

PAGE i - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD

CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

## TABLE OF AUTHORITIES

**Cases**

*American Luggage Works, Inc. v. United States Trunk Co.,*
  158 F. Supp. 50 (D. Mass.), *supplemental op.*, 161 F. Supp. 893 (D. Mass. 1957),
  *aff'd.*, 259 F.2d 69 (1st Cir. 1958) ................................................................................ 12

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
  251 F.3d 1252 (9th Cir. 2001) .......................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ...................................................................................................... 5, 6

*General Electric v. Joiner,*
  522 U.S. 136 (1997) ........................................................................................................ 10

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,*
  423 F.3d 539 (6th Cir. 2005) .......................................................................................... 13

*Juicy Couture, Inc. v. L'Oreal USA, Inc.,*
  2006 U.S. Dist. LEXIS 20787, *77 (S.D.N.Y. 2006) .................................................... 12

*Kumho Tire Co. v. Charmichael,*
  526 U.S. 137 (1999) .................................................................................................. 5, 6, 10

*Lanphere Enters. Inc. v. Jiffy Lube Int'l,*
  2003 U.S. Dist LEXIS 16205 *17 (D. Or. 2003) .......................................................... 11

*M2 Software, Inc. v. Madacy Entertainment,*
  421 F.3d 1073 (9th. Cir. 2005) ........................................................................................ 6

*Merisant Co. v. McNeil Nutritionals,*
  2007 U.S. Dist. LEXIS 27681 (E.D. Pa. 2007) ............................................................ 11

*Schering Corp. v. Pfizer Inc.,*
  189 F.3d 218 (2nd Cir. 1999) ......................................................................................... 16

*Wendt v. Host Int'l, Inc.,*
  125 F.3d 806 (9th Cir. 1997) ............................................................................................ 6

*Zippo Mfg. Co. v. Rogers Imports, Inc.,*
  216 F. Supp. 670 (2nd Cir. 1964) .................................................................................. 16

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

## I.    INTRODUCTION

Payless' prior briefing, as well as its presentations at the oral argument on the various pending summary judgment motions, focused intently on the distinction between those Payless lots at issue in Adidas' claims relating to its alleged Superstar trade dress and those Payless lots at issue in Adidas' claims relating to its Three Stripe Mark.    That distinction is critically important in understanding the fatal deficiencies of the Rule 26 report submitted by Adidas' survey expert, Dr. Gerald Ford.  Dr. Ford failed to conduct any survey whatsoever on any the 214 Payless lots that are accused only under Adidas' Three Stripe Mark claims and that comprise the vast majority of the over $200 million increase in Adidas' post-appeal damages claim.

In 2003 and 2004, prior to the interlocutory appeal, Adidas' case focused exclusively on Adidas' alleged Superstar trade dress, and involved 37 Payless accused shoe lots, $7.7 million dollars in potential damages (by plaintiff's calculation) and addressed only those Payless shoes Adidas claims infringed its alleged Superstar Trade Dress.  Examples of these accused Payless shoes are below:



Payless Lot #382



Payless Lot #3041



Payless Lot #13375



Payless Lot #14334

PAGE 1 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD

CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

Following the appeal, Adidas vastly expanded the case. The current case involves 268 Payless accused shoe lots, almost a quarter of a *billion* dollars in potential damages (according to plaintiff) and six separate new claims relating exclusively to plaintiff's three stripe trademarks (in addition to the trade dress claims). In other words, following the appeal, Adidas chose to increase the lots at issue by more than seven fold and increase the damages they are claiming by more than thirty-two fold. However, the vast majority of these newly accused lots, examples of which are displayed below, are accused of infringing Adidas' Three Stripe Mark rather than its alleged Superstar trade dress and bear little to no resemblance to the Payless lots at issue prior to the appeal:



Payless Lot #2479



Payless Lot #21008



Payless Lot #10604



Payless Lot #19355



Payless Lot #20576



Payless Lot #26638



Payless Lot #29425



Payless Lot #39467

PAGE 2 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

Payless highlighted this distinction during its presentation at the summary judgment oral argument through a demonstrative exhibit (below) that separated the twenty percent of the accused lots related to Adidas' Superstar trade dress claims from the eighty percent of the accused lots relating to Adidas' Three Stripe Mark claims.

## Accused Lots by Claim



Alleged "Imitations" with No Associated Trade Dress Claim
65 Accused Lots (24%)

Alleged "Imitations" Pursuant to Superstar Trade Dress Claim
54 Accused Lots (20%)

Non-Descript with 2 or 4 Stripes
149 Accused Lots (56%)

Prior to the stay, Adidas commissioned Dr. Gerald Ford to conduct a survey supposedly designed to evaluate the likelihood of consumer confusion stemming from one of the Payless lots allegedly infringing Adidas' claimed Superstar trade dress. Adidas subsequently served a Rule 26 Report on Payless discussing Dr. Ford's efforts, a copy of which is attached to the accompanying Declaration of R. Cameron Garrison ("Garrison Decl.") as Exhibit A. This survey was flawed in several regards, which are discussed later in this brief. However Payless does not

dispute that this pre-appeal survey did actually focus on one of the Payless lots accused of infringing the alleged Superstar trade dress.

Following the appeal, however, Adidas did not have Dr. Ford (or any other expert) conduct any additional surveys, despite the fact that Adidas had added 214 Payless lots to this case that bore little or no resemblance to the one Payless lot on which Dr. Ford had conducted his pre-appeal survey. Adidas did, however, submit a supplemental Rule 26 Report from Dr. Ford following the stay. That report is attached to the Garrison Decl. as Exhibit B. In that report, Dr. Ford claimed to have scientifically established a likelihood of confusion with respect to 108 of these 214 newly accused lots. However, because Adidas had not asked him to conduct a survey on even a single one of these 108 lots, Dr. Ford based this conclusion on ten surveys he had conducted for Adidas in other cases, involving defendants not related to Payless in any way and addressing shoes that were not produced by or for Payless or ever sold in a Payless store. Moreover, Dr. Ford has never even seen a single one of these 108 lots. Instead, he based his conclusions on these lots on his viewing of a single photograph of a single side of each of the shoes. Dr. Ford admitted that he had no idea what any of the shoes even looked like from any angle other than the one depicted in those single photographs. Nevertheless, he claims to have been able to definitively conclude that these shoes were likely to cause confusion among consumers based upon surveys conducted on totally different shoes manufactured and sold by parties totally unrelated to Payless. This is, quite simply, the very definition of junk science, leaving Dr. Ford's conclusions with respect to these 108 lots worthless.

In addition, the supplemental Ford report made no reference whatsoever to an additional 109 accused lots. Because Adidas has admitted that it is unaware of even a single instance of actual confusion with respect to these lots (or any of the other Payless lots at issue), Dr. Ford's

omission leaves Adidas with literally not a single piece of evidence supporting its allegations that these 109 additional lots have confused consumers. When combined with the 108 additional lots Dr. Ford has never seen and on which he has never even attempted to conduct a survey, Adidas has submitted no credible evidence of confusion with respect to 217[1] of the 268 lots at issue in this case. At a minimum, because Dr. Ford has no even remotely plausible basis for offering testimony relating to these 217 lots, Dr. Ford's report should be stricken as it relates to those lots and Dr. Ford should be precluded from offering any testimony at trial relating to these lots. In addition, the same fate should attach to Dr. Ford's report and testimony with respect to the remaining 51 lots as a result of the deficiencies in the one survey he did conduct.

## II.    LEGAL AUTHORITY

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and by the principles outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and *Kumho Tire Co. v. Charmichael*, 526 U.S. 137, 148 (1999) and their progeny. Briefly stated, expert testimony is admissible only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

As explained by the Supreme Court, factors that a court may consider in determining the reliability of expert testimony are: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique on which the opinion is based has been subjected to peer review and publication; (3) whether there is a known or potential high rate of error and

---

[1] Three of the lots that are not mentioned in any way in Dr. Ford's report are lots that allegedly infringe Adidas' supposed Superstar trade dress. These three lots account for the difference between the 214 lots comprising the "red" section of the pie chart attached on page 3 and the 217 figure cited here.

PAGE 5 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2
LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

whether there are standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted within the relevant community. *Kumho Tire,* 526 U.S. at 149. Although the trial judge is granted broad latitude in determining whether the proffered expert testimony is reliable, the court has no discretion regarding the actual performance of the gatekeeper function and it must take great care to ensure that any and all scientific testimony or evidence that is admitted is not only relevant, but reliable. *Daubert,* 509 U.S. at 592.

This gatekeeping function extends to determination of the admissibility of a survey, which is a threshold question that must be ruled on by a judge. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). A survey is only admissible if it is both relevant and conduced according to accepted principles. *Clicks*, 251 F.3d at 1263, *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1087 (9th. Cir. 2005).

As demonstrated herein, the Ford Report fails to meet the reliability criteria for expert testimony articulated in Rule 702 of the Fed. R. Evid. and *Daubert*, and is neither relevant nor conducted according to accepted principles, as required by *Clicks* and *M2 Software*. As such, Dr. Ford's survey should be excluded from evidence.

## II.     ARGUMENT

A.     **The Ford Report Should Be Stricken With Respect To Each Of The Shoe StylesUpon Which Dr. Ford Did Not Actually Conduct A Survey.**

1.     **Dr. Ford's failure to conduct new surveys addressing the newly accused lots is fatal to the reliability of his report with respect to those lots.** The most glaring of the flaws in Dr. Ford's report is that he alleges to have scientifically established a likelihood of confusion with respect to 108 Payless lots on which he has never

conducted a single survey and which bear little to no resemblance to the single Payless lot on which he did actually conduct a survey. Not only does such an assertion violate accepted principles for trademark confusion surveys, it also violates even the most basic notions of common sense. It is simply inconceivable that a supposed expert could claim that each of those 108 Payless shoes create a likelihood of confusion with Adidas shoes when that expert has neither asked a single consumer if the shoes caused any confusion nor even held a single one of the accused shoes in his hand. Dr. Ford's assertion to the contrary is the very definition of junk science.

As addressed briefly above, Dr. Ford first submitted a Rule 26 report in this case in August of 2003. At the time this report was submitted, there were only 37 Payless lots at issue in this case. *See* Garrison Decl., ¶ 3. Each of those 37 lots were an alleged imitation of Adidas' supposed Superstar Trade Dress. *Id.* Each of these Payless shoes shared common features with one another, features that made it arguably proper for Dr. Ford to conduct a single survey on a single shoe that contained these common features. While Payless believes this 2003 survey of Dr. Ford's was improper in several regards, discussed in detail below, it does not dispute that Dr. Ford at least conducted a survey on one of the Payless lots alleged to infringe Adidas' supposed Superstar trade dress.

However, following the stay, Adidas massively expanded the scope of this case. In so doing, Adidas added some 231 new lots and alleged nearly a quarter of a billion dollars in additional damages. *See* Garrison Decl., ¶ 5.    17 of these new lots were also alleged infringements of Adidas' claimed Superstar trade dress, bring the total number of lots subject to the Superstar claims to 54. However, other than the presence of two or four parallel stripes on the sides of the shoes, the remaining 214 newly accused lots bore little to no resemblance to the 37 alleged Superstar imitations at issue prior to the stay. Representative samples of the

originally accused shoes are attached as Exhibit C to the Garrison Declaration. Representative samples of the vastly different newly accused shoes are attached as Exhibit D to the Garrison Declaration. These exhibits make clear that the dissimilarity of the shoes is not a matter of conjecture or opinion. There is simply no doubt that the newly accused shoes are noticeably distinguishable from those accused prior to the stay.

However, Adidas faced the same problem with these new lots that it did with the original 37 – it did not have any evidence of any actual confusion. In the absence of such evidence, a plaintiff is left to try and demonstrate that a likelihood of confusion exists, a endeavor usually accomplished through a consumer survey conducted by a survey expert. *See* 6 McCarthy on Trademarks and Unfair Competition § 32:184 (2007). Thus, the absence of any evidence of actual confusion on any of these new lots left Adidas needing a survey to demonstrate a likelihood of confusion in order to establish the requisite culpability on the part of Payless.

Yet Adidas made no effort at all to conduct any such survey. Dr. Ford's supplemental report, as well as his subsequent deposition testimony, make clear that Adidas never asked him to conduct a survey on any of the accused Payless shoes other than the single alleged Superstar imitation. *See* Garrison Decl., Exhibit E, pp. 205:2-11. It is unclear why Adidas failed to conduct these critical surveys. Whether Adidas was trying to save money or was afraid of the result they might get, the fact remains that Adidas has chosen to claim nearly a quarter of a billion dollars in additional damages against Payless without even attempting to demonstrate that any of the Payless shoes allegedly supporting that damages claim were in fact causing confusion with Adidas shoes. Given the undeniable and significant differences between the shoe used in Dr. Ford's initial survey and the newly accused lots, Dr. Ford's failure to conduct a survey on even a single one of those newly accused lots is fatal, and demands that Dr. Ford's report be

PAGE 8 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2
LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

stricken insofar as it applies to any and all of the lots accused by Adidas following the stay in this case.

2.    **Dr. Ford's reliance on third party surveys as a substitute for a survey addressing the shoes actually at issue is improper.**  In the case of half of these new lots, instead of conducting the necessary surveys, Adidas instead chose to attempt to prosecute this case on the cheap and have its hired-gun expert Dr. Ford rely on surveys he conducted on Adidas' behest in no fewer than ten completely different cases on completely different shoes manufactured and sold by completely different parties to allegedly conclude that a likelihood of confusion exists as to the new Payless lots.[2]

At best, Dr. Ford's opinions based on the results of these additional ten surveys involving the shoes of third parties can only be rank speculation and conjecture when extrapolated to Payless shoe lots. The data is irrelevant since Payless shoes were not tested in those surveys. The evidentiary dishonesty of relying on such third-party results was acknowledged by Dr. Ford himself, as he could not recall an single other instance in the countless other cases in which he has provided confusion testimony in which he offered an opinion based solely on third-party surveys of products not actually at issue in the case. *See* Garrison Decl., Exhibit F, pp. 225-26. Moreover, not a single one of the additional surveys Dr. Ford seeks to rely upon has ever been admitted into evidence before a court or otherwise subjected to any critical review by a court. *See* Garrison Decl., Exhibit F, pp. 350-53, 358-59, 361, 366, 376-80.

Worse still, Dr. Ford admitted that he has never even seen a single one of the 108 new Payless lots his report attempts to link to these third party shoes. *See* Garrison Decl., Exhibit F,

---

[2] The many surveys that do not involve a Payless product of any kind are as follows: Target Shoe Survey, K-Mart Atheletech Shoe Survey, K-Mart Olympian Shoe Survey, Fortune Dynamic Shoe Survey, B.U.M. International – Mikal Shoe Survey, Tokyo Park – Tim Tam Kids Shoe #SDA311 Survey, Tokyo Park – Tim Tam Kids Shoe #SD3318 Survey, Steve Madden Shooter Shoe Survey, and the Steve Madden Nancie and Northh Shoe Survey.

PAGE 9 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2
LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

pp. 244:18-245:4. The only knowledge he has about these shoes is that which he has gleaned from a single picture of a single side of each of those shoes. *Id.* On top of never having actually seen the Payless shoes, Dr. Ford admitted that he has never even seen a picture of any part of the shoes other than that which is captured in the single photo he has seen. *Id.* Thus, Dr. Ford is claiming that he has proven with scientific certainty that a likelihood of confusion exists between Adidas shoes 108 Payless shoes that he has never held in his hand, never seen in person and never seen in anything other than a single picture of a single side of each of the shoes. He has reached this allegedly scientifically certain conclusion by comparing these single pictures to photographs of shoes he has analyzed in past cases for Adidas, shoes that are not manufactured by Payless, not sold by Payless and not attributable to Payless in any way. And based on these supposedly scientific results, Dr. Ford and Adidas are asking that Adidas be awarded nearly a quarter of a billion dollars in damages. To call Dr. Ford's conclusions in this regard "junk science" would be doing a disservice to junk science. Dr. Ford's conclusions are a joke, without any foundation whatsoever in any reasonably credible method for evaluating a likelihood of confusion.

As such, the Court should strike Dr. Ford's report with respect to each of these 108 lots. The Court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1998). This Court has similarly held, citing *General Electric v. Joiner*, 522 U.S. 136, 146 (1997), that "[o]pinion evidence 'that is connected to existing data only by the ipse dixit of the expert' is excludable under Rule 702. *Lanphere Enters. Inc. v. Jiffy Lube Int'l*, 2003 U.S. Dist LEXIS 16205 *17 (D. Or. 2003). Dr. Ford improperly uses these immaterial surveys to bolster his

PAGE 10 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2
LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

opinion concerning dozens of lots of Payless shoes which he never saw, let alone tested. *See* Garrison Decl., Exhibit F, pp. 230-231.

Even if some modicum of relevant testimony could be wrung from these surveys to address any issues in the present case, the clearly prejudicial nature of those surveys outweighs any of possible relevance of the surveys. *See Merisant Co. v. McNeil Nutritionals*, 2007 U.S. Dist. LEXIS 27681 (E.D. Pa. 2007) (3 market surveys designed for purposes other than the instant litigation and offered by Plaintiff as evidence of confusion were excluded as highly prejudicial). Using Ford's expert status, Adidas is cynically attempting to show guilt-by-association between Payless and other "accused" shoe retailers (even where those surveys were never admitted into evidence and the cases against those third parties were settled). At a minimum, this Court should reject that portion of Dr. Ford's Report which relies on these additional surveys.

    3.    **Dr. Ford should be precluded from offering any testimony regarding the 109 accused lots that are omitted from his report entirely.** As noted above, Dr. Ford's report contained no mention whatsoever of 109 of the lots that have been accused in this case. Dr. Ford did not even attempt to include these lots in his misguided attempt to use surveys from other cases to somehow implicate Payless' shoes. For whatever reason, Dr. Ford simply ignored these 109 lots altogether. As such, Dr. Ford should be precluded from offering any testimony about any of those 109 lots.

**B.    The Survey Dr. Ford Actually Did Conduct, Addressing the Alleged Superstar Imitations, Is Deficient In Several Ways.**

1.    **The stimuli used does not replicate a post-sale environment.** The stimulus chosen and used by Dr. Ford for the conduct of the survey was deeply flawed. Dr. Ford used a still photograph of Payless shoe #13375 as the survey exhibit (or stimulus) for the respondents to view during the interview process. *See* Garrison Decl., Exhibit A, p. 6. The exhibit photograph only shows the left side of the left shoe. No other photographs of other angles or views of the shoe were offered to respondents. A choice of a still photograph is a fatal flaw when conducting a survey to measure post-sale confusion since the photograph fails to replicate actual market conditions, namely how a given product would be encountered in a post-sale context. "When survey evidence is used to prove the state of mind of a prospective purchaser the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results." *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 U.S. Dist. LEXIS 20787, *77 (S.D.N.Y. 2006) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32: 163 (4th ed. 2006) (internal quotations omitted)); *See also American Luggage Works, Inc. v. United States Trunk Co.*, 158 F. Supp. 50 (D. Mass.), *supplemental op.*, 161 F. Supp. 893 (D. Mass. 1957), *aff'd.*, 259 F.2d 69 (1st Cir. 1958).

Rather than try to replicate actual market conditions, Ford uses a two-dimensional, still photograph of a foot in a shoe. The still photograph provided to respondents in Dr. Ford's survey shows one side of the Payless shoe at one angle with no opportunity for a respondent to view the shoe from alternate angles, at various distances, or any other likely variation common to a post-sale context. Instead, the photograph ensures that the stripes on the Defendants shoe are squarely

PAGE 12 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD

in the respondents view, likely prompting the respondent—subconsciously or not—to the importance of the stripes to the survey's purpose.

In addition to the results Dr. Ford claims he has reached in regard to post-sale confusion, the Ford Report contains opinions as to initial interest confusion. *See* Garrison Decl., Exhibit A, p. 20. One of the primary requirements in testing for initial interest confusion is whether there is confusion at the source of the goods. *See Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 549 (6th Cir. 2005) (holding that there was no theory of infringement upon which a guitar maker could prevail against the junior user because there would be no confusion at the point of sale). Dr. Ford made no attempt to test for confusion in the marketplace, at the point of sale, using a universe selected from potential purchasers for Payless shoes.

This fundamental failure by Dr. Ford is not accidental. Both Adidas and Dr. Ford realize that in conducting a standard likelihood of confusion survey replicating market conditions, including the point of sale of the products (or as close a replication as possible), there would be little or no confusion as to the source of the Payless shoes because, at the point of sale, Payless customers would know they are purchasing a Payless shoe in a Payless store and would not be confused. *See* Garrison Decl., Exhibit A, p. 11. By failing to conduct a survey to test for a likelihood of confusion among defendant's potential purchasers using a simulation of actual marketplace conditions, plaintiff tacitly admits that there is no likelihood of confusion and must rely on Ford's survey to create an issue of alleged post-sale confusion.

Another fatal flaw in Ford's survey occurred by allowing interviewees to keep the stimuli in front of them throughout the interview process. Market conditions for purchasing an athletic shoe are not such that a consumer is able to view an item while answering specific questions

about that item.  The photographs Dr. Ford used in his survey limited the portions of the shoes which a consumer could view in the first place.  After presenting this photograph containing limited features of the shoe, the interviewer asked a series of questions about the features of the shoe in the photograph.  *See* Garrison Decl., Exhibit A, pp. 10-11.  By limiting the number of design features on the shoe in Dr. Ford's stimuli and asking multiple questions about design features the interviewee recognizes in the stimuli, it is a foregone conclusion that a high percentage of the interview pool will name the same design features.  Dr. Ford's survey was a "reading test" in which interviewees were expected and encouraged to list any design elements of a shoe in front of them.  Dr. Ford's survey did not simulate market conditions or a plausible post-sale environment.  Dr. Ford's opinion on the results of the survey should therefore be excluded.

      2.      **The claimed trade dress was not isolated in the stimuli.**  The stimuli used by Dr. Ford  failed to isolate the claimed trade dress.  Plaintiff claims that the trade dress at issue in this case is comprised of, *inter alia*, parallel stripes on the shoe, the shell toe, and the flat sole.  *See* Third Amended Complaint at ¶ 22.  Dr. Ford used two control cells to measure the level, if any, of guessing, miscalculation or error in the responses from the experimental cell (the group of respondents who viewed the Payless shoe).  *See* Garrison Decl., Exhibit A, pp. 6-7.  Each control cell was comprised of a group of respondents who viewed a still photograph of a made-up shoe.  One group viewed a photograph of Defendant's shoe with all indicia of the Plaintiff's supposed trade dress removed.  The other control group viewed the same photograph as the first control cell with 3 "non-parallel" stripes superimposed upon the visible side of the shoe in the picture.  *Id.* at 7-8.  The interviews comprising the second control set were conducted some months after the first control set.  This is because Dr. Ford's use of a control similar to the first control was criticized in another case.  In response to such criticisms, Dr. Ford created a second control set, tacitly admitting that the criticisms of the first control set were

PAGE 14 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

valid. *See* Garrison Decl., Exhibit F, pp. 371-372, 388-389. Dr. Ford refers to the lines on the shoe in the photograph used for the second control set as non-parallel, but a more accurate characterization of this bizarre configuration would be "zigzag."

Both controls however failed to control the "background noise" in Ford's flawed survey. The results of the replication study run by Payless and set forth in the Jacoby Report underscore that, when using the same methodology as Ford, the Ford survey results were preordained, as 40% more survey respondents identified Adidas as the source of Jacoby's control shoe than the actual shoe's maker, K-Swiss. *See* Garrison Decl., Exhibit B, pp. 37-40. Simply put, although Adidas may have rights in three stripes, if shoes with two, four, or five stripes are put in front of consumers, many will believe that shoe is from Adidas solely because it has stripes, regardless of the number. *See* Garrison Decl., Exhibit B, pp. 31-32 (discussing responses to Ford's survey in light of the Plaintiff's market share and "share of voice" in the marketplace).

**3.     The Structure of the Survey's Principal Question Was Leading.**  The Ford Survey included the following question of respondents: "Do you believe that this shoe [1] one, <u>is</u> being put out with the authorization or approval of any other company or companies; [2] two, is <u>not</u> being put out with the authorization or approval of any other company or companies; or [3] three, don't know or have no opinion?"  *See* Garrison Decl., Exhibit A, p. 11 (emphasis in original). The implication inherent in this question is clearly that permission was required. *See* Garrison Decl., Exhibit B, p. 16. Though the option of "no opinion" is available to respondents, this is merely a form of a "yes or no" question and is, therefore, leading the respondent to believe that some level of authority was required if such a shoe was brought to market. *See* Garrison Decl., Exhibit B, pp. 16-17.

PAGE 15 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

A survey's sincerity can be called into question by including leading questions. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 233-34 (2nd Cir. 1999) (citing *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 684 (2nd Cir. 1964)). In this case, the survey's central question upon which Dr. Ford bases his opinions regarding post-sale and initial interest confusion as to the Payless shoe was leading. Therefore the results obtained in response to that question are not reliable and should be excluded.

### III.    CONCLUSION

At the very minimum, Dr. Ford's survey should be stricken, and Dr. Ford prevented from offering any testimony at all regarding the 108 accused lots which he has attempted to implicate through adoption of surveys and reports conducted in other cases and he should also be barred from offering any testimony regarding the 109 accused lots that his report does not address in any way. Dr. Ford's report should also be stricken with respect to the remaining 51 lots because of the methodology flaws discussed above.

DATED:  October 22, 2007

LANE POWELL PC

By _____
    Milo Petranovich, OSB No. 81337
    Kenneth R. Davis, II, OSB No. 97113
    Telephone: (503) 778-2100

LATHROP & GAGE L.C.
    Michael G. Martin (admitted *pro hac vice*)
    William A. Rudy (admitted *pro hac vice*)
    David V. Clark (admitted *pro hac vice*)
    Stephen J. Horace (admitted *pro hac vice*)
    Gerald M. Kraai (admitted *pro hac vice*)
    Bridget A. Short  (admitted *pro hac vice*)
    R. Cameron Garrison (admitted *pro hac vice*)
    Travis W. McCallon (admitted *pro hac vice*)

PAGE 16 - MEMORANDUM IN SUPPORT OF DEF'S MOTION TO STRIKE THE RULE 26 REPORT OF DR. GERALD FORD
CC 1933877v2

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100

David R. Barnard (admitted *pro hac vice*)
Phillip S. Lorenzo (admitted *pro hac vice*)
Michael J. Roche (admitted *pro hac vice*)
Telephone: (816) 292-2000

Attorneys for Defendant Payless ShoeSource, Inc.

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
(503) 778-2100