IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC., and ADIDAS-<br>SALOMON AG,<br><br>             Plaintiff,<br><br>  vs.<br><br>PAYLESS SHOESOURCE, INC.,<br><br>             Defendant. | Civil Case No. 01-1655-KI *(Lead Case)*<br>RELATED CASE to Cv 03-1116-KI<br><br>OPINION AND ORDER |

Stephen M. Feldman
Thomas R. Johnson
Perkins Coie LLP
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209-4128

Jerre B. Swann
William H. Brewster
R. Charles Henn Jr.
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309

      Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

William B. Crow
Schwabe, Williamson & Wyatt
Suites 1600-1900 PacWest Center
1211 S. W. Fifth Avenue
Portland, Oregon 97204-3795

William A. Rudy
Lathrop & Gage L.C.
2345 Grand Blvd., Suite 2800
Kansas City, Missouri 64108-2612

      Attorneys for Defendant

KING, Judge:

Plaintiff adidas America, Inc. and adidas-Salomon AG (together, "adidas") prevailed against Payless ShoeSource, Inc. ("Payless") on trademark infringement claims tried to a jury. The court entered a Judgment and a Revised Order of Permanent Injunction. Before the court are adidas' Motion for Attorneys' Fees and Expenses and Prejudgment Interest (#975) and Bill of Costs (#971).

## DISCUSSION

I.    <u>Attorney Fees</u>

adidas seeks $6,574,493.40 in attorney fees. adidas contends that this is an exceptional case based on the jury's finding that Payless acted willfully or in bad faith. adidas also relies on the jury's award of punitive damages for acting with malice or in wanton and reckless disregard for adidas' rights.

Payless puts forth several reasons why attorney fees should not be awarded. I address the most persuasive below.

Under the Lanham Act, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a)(3). "A trademark case is exceptional where

Page 2 - OPINION AND ORDER

the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1216 (9th Cir. 2003). Attorney fee awards under § 1117(a) are "never automatic and may be limited by equitable considerations." Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 711 (9th Cir. 1999) (internal quotation omitted).

After carefully considering the jury's findings and my own view of the evidence, I conclude that although the question is a close one, this is not an exceptional case which supports an award of attorney fees.

I first note that Payless sold the infringing shoes for three years believing that Judges Jelderks' and Haggerty's opinions allowed the sales under the 1994 settlement agreement. This is balanced by the fact that Payless did not stop selling the shoes after the Ninth Circuit reversed those rulings. The Ninth Circuit, however, only stated that adidas could prosecute these claims. The court did not give any opinion on whether the shoes infringed the trademark. Thus, Payless could have prevailed at trial.

Another factor is that there was no evidence of point-of-sale confusion. Moreover, the infringing shoes all had two or four stripes rather than the three stripes from adidas' trademark. There was substantial evidence of companies other than Payless selling two and four stripe shoes for years.

Finally, there was no evidence that adidas lost any sales because of the infringement. The Judgment, which was based on more theoretical types of damage than lost sales, was for a substantial amount.

For these reasons, I deny the request for attorney fees.

II.    Nontaxable Expenses

adidas seeks $1,362,380.94 in nontaxable expenses it contends are recoverable as expenses ancillary to the statutory attorney fees award. See Mathis v. Spears, 857 F.2d 749, 758 (Fed. Cir. 1988) (nontaxable expenses can be awarded to the prevailing party under the patent laws which give the court discretion to award reasonable attorney fees in exceptional cases). The nontaxable expenses include telecommunications expenses, postage, messenger charges, travel, online research, mediation fees, and expert witness fees. Because I decline to award attorney fees, I also deny the request for the nontaxable expenses.

III.    Bill of Costs

adidas seeks $383,226.49 in costs that are taxable under 28 U.S.C. § 1920. Payless objects to many of the costs sought.

Federal Rule of Civil Procedure 54(d)(l) provides, in part: "Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees– should be allowed to the prevailing party." This rule is not read "as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964). Expenses which may be taxed as costs against a losing party are enumerated in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;

Page 4 - OPINION AND ORDER

>    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
>    (5) Docket fees under section 1923 of this title;
>
>    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

However, the discretion to grant costs does not include the authority to tax costs beyond those authorized by statute or contract. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Thus, the discretion granted under Rule 54(d) allows a court to decline to tax costs, but does not authorize a court to award excess costs in the absence of a "specific congressional command." Id. at 442.

Payless does not object to the following costs: (1) $1,211.06 for service fees; (2) $150.00 for witness fees; (3) $20.00 in docket fees under 28 U.S.C. § 1923; and (4) $150.00 in filing fees. I award those costs.

A.    Fees of the Clerk

adidas seeks $400.00 in pro hac vice fees paid to the Clerk of Court. Courts are split on whether pro hac vice fees can be taxed. See Woodruff v. Hawai'i Pac. Health, Civ. No. 05-00521-JMS-LEK, 2008 WL 5115051, at *5-6 (D. Haw. Dec. 5, 2008) (collecting rulings). I conclude that pro hac vice fees are taxable as costs if reasonably necessary to prosecute the case. Three of the attorneys who applied pro hac vice–William Brewster, Jerre Swann, and Charles Henn–each billed a significant number of hours. I will tax the $300.00 in fees for their applications. Miles Alexander, however, billed only 23 hours. Vanderhoff Decl. Ex. F at 1. Over 50 other attorneys at Kilpatrick Stockton billed time without being admitted to this court,

Page 5 - OPINION AND ORDER

with many of them billing over 500 hours. I am unaware of why Mr. Alexander's admission was reasonably necessary and decline to award the amount for his pro hac vice fee.

In total, I award $300.00 for pro hac vice fees.

B.      Fees of the Court Reporter

adidas seeks $113,747.54 for fees of the court reporter. This includes $80,778.81 for deposition transcripts and videos, $8,981.25 for synchronization of deposition transcripts for use at trial, and $23,987.48 for hearing transcripts and daily trial transcripts.

Payless objects to a $284.65 invoice for a transcript which states that it is for adidas' case against Wal-Mart. I assume that this was inadvertently included and will subtract out the amount.

Payless next objects to paying for videotaping depositions, contending that taxing costs for this is strongly disfavored in this district. adidas notes that § 1920(2) was amended in 2008 to include electronically recorded transcripts. Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 6, 122 Stat. 4291, 4292 (2008). Numerous witnesses were presented at trial by videotape. The videotapes need to be edited and formatted to allow for efficient presentation in court. I reject Payless's objection and award the costs incurred to do so. See BDT Prods., Inc. v. Lexmark Int'l, Inc., 405 F.3d 415, 419 (6th Cir. 2005) (affirming award of charges related to video depositions, including video services, rough disk, interactive realtime, video tapes, and the synchronization of the video and deposition transcripts).

Payless objects to $2,245.00 in delivery costs. Postage and delivery costs, even of depositions, are not taxable under § 1920. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006). I decline to award these costs.

Page 6 - OPINION AND ORDER

Payless objects to the portion of the trial transcripts which is the premium charge to get daily transcripts. The premium charge for a daily transcript can be awarded if the daily transcript is a necessity rather than for the convenience of counsel. Asphalt Supply & Serv., Inc., 75 Fed. Cl. 598, 602-03 (2007). This trial involved numerous complex legal arguments for which trial attorneys would have required daily transcripts on which to base their points. I conclude that daily transcripts were reasonably necessary during trial and award the premium fee.

Thus, I award $111,217.89 for fees of the court reporter.

C.     Fees for Printing, Exemplification, and Copying

adidas seeks $239,093.58 in fees for printing and $28,454.31 in fees for copies of papers necessarily obtained for use in the case. In-house copying is charged at $0.15 per page at Kilpatrick Stockton LLP and $0.10 per page at Perkins Coie LLP. Larger copy jobs, including document production for discovery requests which required Bates numbering and confidentiality designations, are typically sent outside the firms. I find that the division of copying between in-house and outside vendors is reasonable. I also find that the per-page charges at the two firms are reasonable.

Payless calculates that $9,876.15 of these copying costs are for copying pleadings in the case. It seeks to have the copying costs reduced to this amount and makes three specific objections, in addition to generally arguing that adidas has not met its burden to establish that the copies were necessarily obtained for use in the case.

adidas generally argues that the law does not require it to explain each document reproduction charge incurred during a seven-year litigation. adidas' attorneys state in declarations that all of the copying charges were necessarily incurred in the action.

Copying costs for documents produced in discovery, as well as the court's copies of documents filed to support motions, are held to be reasonably necessary for use in a case and thus are routinely awarded in this court.  See, e.g., Kibbee v. City of Portland, No. CV98-675-ST, 2000 WL 1643535, at *4 (D. Or. Oct. 12, 2000).  Extra copies of filed papers, correspondence, and copies of cases are considered to be made for the convenience of attorneys and thus are not taxable.  Id.  This breakdown of costs is followed in other jurisdictions.  See, e.g., Voight v. Subaru-Isuzu Automotive, Inc., 141 F.R.D. 99, 103 (N.D. Ind. 1992).  The fact that items are neither introduced into evidence nor otherwise become part of the official court record does not determine whether that item was necessarily obtained for use in the case.  Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir. 1990) (per curiam) (allowing costs for reproducing documents even though documents were not introduced as evidence to support summary judgment motion).

### 1. Unspecified Document Production Costs

Payless contends that adidas failed to describe most of the copying services for which it seeks costs.  Payless specifically calls out a few particular charges:

● 134 pages of charges totaling $31,047.75 for document reproduction and photocopies, Bill of Costs Ex. D at 31-164.

adidas claims that these are in-house copying charges at Kilpatrick Stockton for the duplication of exhibits for use with declarations and at depositions, document production, and the duplication of materials used in briefing and responding to motions.

In a case of this size and nature, it would not be possible for a law firm to track the nature of each copy and report the information on a per copy basis to the court in a bill of costs. Likewise, it would not be possible for the court to review each copy charge and determine if it

Page 8 - OPINION AND ORDER

was reasonably necessary for use in the case, as opposed to a convenience for counsel. There are just too many documents to allow this type of review. I accept counsels' statements in their declarations explaining that the copying costs were necessarily incurred. Thus, I deny the objection.

- charges totaling $15,160.25 for copies only described as color copies, id. at 165-70.

adidas argues that the color copies were essential for the court's and the jury's understanding of the claims at issue in this particular action. It contends that the color copies were used extensively in depositions and at trial.

A look at the color copies in the Verdict demonstrates why color copies were absolutely essential in this case. Using only black and white copies makes all of the shoes look the same. I deny the objection.

- $18,934.44 in charges from an outside copy service described as Imaging Blowbacks,[1] DVD Duplication, and Color Blowbacks, id. at 186-93.

Relying on the specific invoices, adidas contends that these charges were necessarily incurred when adidas was preparing for summary judgment, in the spring and summer of 2007, and when adidas was preparing for trial, in the spring of 2008. adidas also notes that $8,366 of this charge was for color copies of the joint deposition testimony designations for use at trial which were prepared on behalf of all parties.

Based on adidas' representation, I deny the objection.

- $21,320.89 for in-house copying by Perkins Coie, id. at 194.

---

[1] In this context, a blowback is a printed copy of an image or electronic document. http://www.reliable-co.com/faqs1.asp#9

Page 9 - OPINION AND ORDER

adidas explains that to achieve cost savings benefits, Perkins Coie typically out-sources large copying tasks to outside vendors and copies in-house documents such as pleadings, documents used as exhibits to declarations submitted with motions, documents used as exhibits in depositions and hearings, and expert reports and related documentation.

For the reasons above, I deny the objection.

2.     Nonprinting-Related Services

Payless objects to costs for what it characterizes as nonprinting-related services. In particular, there is a total of $85,985.38 for copies, trial exhibits, professional services, image capture, and exhibit CDs, including a single charge of $21,409.47 for black/white and color copying, database administration, data archive and case management services. Bill of Costs Ex. D at 180-85.

adidas explains that the April 2004 charge of $21,409.47, from a single vendor, was for trial-related expenses for the trial first scheduled in June 2004 prior to the case being stayed pending the appeal. adidas provided the complete invoice which more fully describes the services. For example:

> Black & White Document Product–There are various categories of black-and-white document production. These charges are associated with the processing of black-and-white documents or images provided by the trial team for use with the presentation system.
>
> Our document production process includes a complete inventory and document review, establishing a standard document ID reference, disassembly and preparation of documents for imaging, imaging of documents, correction of image orientation, de-skewing images; and final quality-control inspection prior to client delivery.
>
> Certain categories of black-and-white document production include printing images as bar-coded pages, proofing page for page against originals or index, logical organization of all materials in trial binder, and creating custom covers and spines for notebooks (consumables are billed separately).

Page 10 - OPINION AND ORDER

Henn Decl. in Supp. of Pl.'s Bill of Costs Ex. A at 2. Although the 2004 trial date was cancelled, adidas used these materials to prepare the 2008 trial materials.

Concerning the remainder of these charges, adidas claims that they were incurred for preparation of the summary judgment motion, trial exhibits, and binder preparation.

I again accept adidas' representation that the charges were necessarily incurred in support of the summary judgment motions and the trial. I also note that the 2004 trial was cancelled close enough to the trial date that extensive trial preparation would have been underway before the case was stayed. I deny the objection.

Payless objects to total charges of $56,768.62 for copies from outside vendors described as photocopies; scanning, OCR, PDF and master CD expenses; litigation copies and delivery; translation services; technical time; TIFF conversion; and blowbacks. Id. at 173-78.

adidas provided more detailed invoices and claims that these copies were necessary during the entire course of this litigation. It also notes that over a dozen invoices from 2003 and 2004, which total over $11,000, were for vendors in the Kansas City area. adidas arranged for these copies of documents at Payless's headquarters after inspecting files there. adidas argues that it was saving money by using local vendors and not shipping the documents elsewhere.

We are well past the day when all copies are basic photocopies. The electronic storage of documents, especially when they are numerous, allows a more efficient way to litigate the case and to present the evidence at trial. I deny the objection.

### 3. Copying of Other Media

Payless objects to the total charge of $28,454.31 for the production of numerous CDs labeled ADIKMART or EADIKM. Payless contends that these costs all relate to adidas' separate litigation against Kmart and should not be taxed against Payless. It further argues that the cost of

Page 11 - OPINION AND ORDER

putting the documents on CD, rather than producing paper versions, is for the convenience of counsel and should not be taxed.

According to adidas, Payless agreed to these costs in 2006. adidas realized that documents sought by Payless were the same documents produced in the <u>Kmart</u> case. adidas' attorney sent a letter to Payless's attorney on October 12, 2006:

> In an effort to minimize the burden on and expense to Payless of having to travel to Portland to inspect all of the adidas documents and then make arrangements to have the documents copied, we are willing, subject to the conditions set forth below [concerning confidentiality], to authorize the disclosure to Payless (and use by Payless) of all of the documents produced by adidas in the <u>adidas v. Kmart</u> case.
>
> As an initial matter, we note that with the exception of adidas's most recent enforcement files, which will be produced shortly, adidas's document production in the <u>adidas v. Kmart</u> case is complete. Because the relevant documents responsive to Payless's discovery requests are identical to those responsive to Kmart's discovery requests, we see no reason to compel Payless to go through the exercise of inspecting and copying all of the same documents anew.

Feldman Decl. in Supp. of Pl.'s Bill of Costs Ex A. at 1.

Payless presumably accepted this offer if the CDs were made. From the Bates numbers, it appears to be over 300,000 documents copied onto more than 45 CDs. Electronic production of such a large number of documents is reasonable. I deny the objection against the $28,454.31 cost.

4.  <u>Summary of Taxed Copy Costs</u>

In summary, I award service fees of $1,211.06, witness fees of $150.00, docket fee of $20.00, filing fee of $150.00, pro hac vice fees of $300.00, court reporter fees of $111,217.89, printing fees of $239,093.58, and copy fees of $28,454.31, for a total of $380,596.84.

IV.	Prejudgment Interest

adidas seeks an award of prejudgment interest at the prime rate, totaling $10,445,154.12 on the award of actual damages and $6,712,823.98 on the award of profits. These amounts are based on the prime rate applicable while the case was pending, compounded annually. adidas claims that it is entitled to prejudgment interest because of Payless's willful and malicious infringement, dilution, and unfair competition.

Payless argues that adidas's motion is untimely, that prejudgment interest is not available under the Lanham Act except for counterfeiting of a trademark, and that this case is not exceptional.

I decline to award prejudgment interest for two reasons.

First, I agree that the motion is untimely. A post-judgment motion for prejudgment interest is governed by Federal Rule of Civil Procedure 59(e), whether the prejudgment interest is discretionary, Osterneck v. Ernst & Whinney, 489 U.S. 169, 175, 109 S. Ct. 987 (1989), or mandatory, McCalla v. Royal Maccabees Life Ins. Co., 369 F.3d 1128, 1131 (9th Cir. 2004). I am unpersuaded by adidas' attempts to distinguish McCalla. McCalla does not turn on the three year delay in filing for prejudgment interest. Thus, the fact that adidas is only one week late is of no importance–the Rule's deadline is a firm one. For the first time in this motion, adidas asked the court to determine if it was entitled to prejudgment interest. This is a different situation than the late motion to reconsider filed in Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892 (9th Cir. 2001), which caused the court to state that a motion to reconsider filed within ten days of entry of judgment is treated as a motion to alter or amend judgment under Rule 59(e) but is treated as a motion for relief from a judgment under Rule 60(b) if filed later. Id. at 899. I am not being asked to reconsider a prior ruling about prejudgment interest.

Page 13 - OPINION AND ORDER

Rule 59(e) requires that motions to alter or amend a judgment be filed no later than ten days after entry of the judgment. I entered the Judgment on November 13, 2008. adidas filed the motion seeking prejudgment interest on December 5, more than ten days later. Moreover, Rule 6(b)(2) states that the court cannot extend the time to act under Rule 59(e). Consequently, I do not have to determine the effect of the parties' stipulation to extend some of the filing dates which was drafted so that the motion does not list prejudgment interest as one of the deadlines but the supporting memorandum does.

Because the motion is untimely under Rule 59(e), I cannot award prejudgment interest.

Second, the Lanham Act does not mention prejudgment interest as a remedy. In support of its request, adidas cites Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004), which concluded that prejudgment interest was available to make a copyright holder whole after copyright infringement, even though the statute was silent on the topic. Id. at 717-18. adidas also cites cases from other circuits which hold that prejudgment interest is available for trademark infringement. E.g., Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989) (prejudgment interest in a trademark infringement case is particularly appropriate when the infringement is intentional and outrageous); United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1236 (10th Cir. 2000) (reversing the lack of a prejudgment interest award in a trademark infringement claim to allow trial court to consider whether an award would serve to compensate the trademark holder and whether equity precludes an award); American Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2nd Cir. 1990) (prejudgment interest in a trademark infringement case is normally reserved for exceptional cases).

Even assuming that I could have awarded prejudgment interest, I would have declined to do so. As I explained above, I do not consider this an exceptional case. I also do not believe that prejudgment interest is required to make adidas whole from this infringement.

## CONCLUSION

adidas' Motion for Attorneys' Fees and Expenses and Prejudgment Interest (#975) is denied. adidas' Bill of Costs (#971) is granted in part. I award costs in the amount of $380,596.84.

IT IS SO ORDERED.

Dated this ____6th_____ day of February, 2009.

                                                            /s/ Garr M. King
                                                            Garr M. King
                                                            United States District Judge